## Shoenberger *et al.* *versus* The School Directors.

A., by his will, devised certain real estate to his widow for life, with power to dispose of the same by will to such persons as she might appoint, with remainder over, in default of such appointment; an Act of Assembly, subsequently passed, without notice to the remainder-men, some of whom were minors, authorized two persons, as trustees, to sell and convey the premises, and dispose of the proceeds according to the directions of the will: *Held,* that this was not a valid exercise of legislative power, and that a good title could not be made under the act.

IN EQUITY.   This was a bill in equity by John H. Shoenberger and George K. Shoenberger against John H. Ralston, and others, School Directors of the Fifth Ward of the City of Pittsburgh, to

enforce the specific performance of a contract for the sale of a lot of ground, in the city of Pittsburgh.

The bill set forth that Dr. Peter Shoenberger, deceased, by his will, dated the 14th June 1852, devised the premises in question to his wife, Sarah, for and during her natural life; she to have the right to dispose of the same by will (whether *feme sole* or *covert* at the time), to and amongst her children or grandchildren, in such way and manner as she might limit and appoint, by any writing in the nature of a last will and testament, duly executed according to law; but that, in case his said wife, Sarah, should fail to make an appointment, by will, of the disposition of the estate of inheritance in the house and lot aforesaid, with the appurtenances, to and amongst her children or grandchildren, then the said Peter devised the said house and lot and premises, with the appurtenances, to his surviving children, and the lawful issue of such of his children as should then be dead leaving lawful issue; such issue always to take, if one person solely, and if several persons, as tenants in common in equal parts, such share only as would have been taken by his, her, or their parent, if such parent had been living at the death of his said wife, Sarah.

That, it having been ascertained that it would be greatly for the interest of all persons interested in the real estate so devised as aforesaid, that the same should be sold in fee, and the proceeds thereof invested and disposed of according to the provisions and directions contained in said will, in respect to the said real estate, upon an application to the legislature to grant the requisite power to sell and convey said real estate, an act was passed on the 17th March 1858, by which the said George K. Shoenberger and John H. Shoenberger were authorized, as trustees, to sell the said real estate, and to make and deliver deeds for the same, to the purchasers thereof, in fee simple; and to hold the proceeds thereof in trust, to invest and dispose of the same according to the provisions and directions contained in the last will and testament of Dr. Peter Shoenberger, deceased, in respect to the said real estate; provided, that the said sales should be approved by the Orphans' Court of Allegheny county, and that, before confirming the said sales, the said court should require sufficient security to be given by the said George K. Shoenberger and John H. Shoenberger, for the faithful performance of the duties of said trust.

That, in pursuance and by virtue of the authority contained in said act, the complainants entered into an agreement with John H. Ralston, and others, constituting the Board of Directors of the Public Schools of the Fifth Ward of the City of Pittsburgh, for the sale and conveyance to them, and their successors, of all the said real estate with the appurtenances, for the sum of

[Shoenberger *et al.* *v.* The School Directors.]

$19,000. The said agreement being signed by said Board of Directors.

That, on the 1st day of April 1858, they caused to be tendered to said Board of Directors, a deed of conveyance, in fee simple, for said real estate, whereon was endorsed an approval by the Orphans' Court of Allegheny county of said sale, and a direction that the complainants should give security in said court in a sum sufficient for the faithful performance of the duties of their trust aforesaid; and also a quit-claim deed from the widow of the said Dr. Peter Shoenberger; and demanded of them a compliance on their part with the terms of said agreement.

But the respondents, though expressing an anxious desire to receive the said conveyances and comply with their part of said agreement, alleged as a reason for declining to do so, that serious doubts were apprehended of the sufficiency of the title to said real estate; and declaring further that if the question of the validity and sufficiency of the title were submitted to this court, and the said court should decide that the complainants and Mrs. Sarah Shoenberger could make a good and sufficient title to the said Board of School Directors, and their successors, in virtue of the power, authority, and provisions aforesaid, for said real estate, they would be entirely satisfied that this court should, by their decree, direct proper conveyances to be made by the complainants and Mrs. Sarah Shoenberger, of said real estate, to the respondents and their successors, and also that the respondents and their successors should comply with said agreement.

Whereupon they prayed the court to declare that the said complainants and the said Sarah Shoenberger could, in virtue of the power, authority, and provisions aforesaid, make a good and sufficient title to said Board of School Directors, and their successors, for said real estate, and direct by decree that the complainants should cause such title to be made to said Board of School Directors, and their successors, for said real estate; and that said respondents, and their successors, should thereupon comply with said agreement so made as aforesaid.

The answer admitted the truth of the statements in the bill, and averred the readiness of the respondents to comply with their contract, if a good title could be made to the premises. The cause came on for hearing on bill and answer.

*Loomis*, for the complainants, cited Norris *v.* Clymer, 2 *Barr* 284; Biddle *v.* Starr, 9 *Id.* 467.

*McConnell*, for the respondents, cited Bumberger *v.* Clippinger, 5 *W. & S.* 311; Rogers *v.* Smith, 4 *Barr* 101; Act 13th May 1857, *Brightly's Purd.* 1211.

[Shoenberger v. The School Directors.]

The opinion of the court was delivered by

WOODWARD, J.—The question presented is, whether a valid title can be made to part of the estate of the late Dr. Shoenberger, under an Act of Assembly of 17th March 1858, authorizing the sale.

The act recites the will of Dr. Shoenberger, and the devise of the particular property in question (a house and lot in Pittsburgh) to his wife for life, with the right to dispose of the same, by will, amongst her children or grandchildren, as she may appoint, with remainder over, in default of such appointment, to his surviving children and the issue of his deceased children *per stirpes;* and then enacts that George K. Shoenberger and John H. Shoenberger be authorized, as trustees, to sell the said property, to make deeds therefor, and to invest and dispose of the proceeds, according to the directions of Dr. Shoenberger's will. A proviso requires the sales, and the sureties of the trustees, to be approved by the Orphans' Court.

The will of Dr. Shoenberger devolves no duties on the individuals named as trustees in this Act of Assembly, and gives them no interest in, or power over, the property in question. Dr. Shoenberger, as the owner of it, had the right to devise it, and the estates and interests created by his will, vested in the devisees at his death.

The question is, therefore, whether the legislature can appoint two men to sell and convey property belonging to other people. If it may be done in this instance, it may be repeated in any number of instances, and a system of conveyances may be inaugurated, which will leave every man in doubt whether he holds his own property, or his neighbor's, or any property whatever.

It is supposed, that this legislation finds precedent and sanction in the nine hundred statutes mentioned by C. J. GIBSON, in Norris v. Clymer, 2 *Barr* 284; but this is a mistake.

Laying out of view such *anomalous* and exceptional instances of legislation as are found in Braddee v. Brownfield, 2 *W. & S.* 271, and De Chastellux v. Fairchild, 3 *Harris* 18, it will be found, that legislation of this questionable character has been founded on a moral obligation to convey, or on the necessities or interests of parties under disability to convey. The numerous Acts of Assembly for validating informal conveyances, types of which are to be seen in Barnet v. Barnet, 15 *S. & R.* 72; Tate v. Stooltzfoos, 16 *S. & R.* 35; Mercer v. Watson, 1 *Watts* 330; and Menges v. Wertman, 1 *Barr* 222, belong to the first class; whilst those acts which authorize trustees and guardians to convert estates in their hands for the benefit of infants, lunatics, and others not *sui juris*, of which Norris v. Clymer, 2 *Barr* 284, is a specimen, belong to the second class. Biddle v. Starr, 9 *Barr* 462, does not perhaps fall into either of these classes, but is defensible on the ground

[Shoenberger *v.* The School Directors.]

of common consent. It was partition among tenants in common, one of whom had died leaving a will which was contested. All the parties in interest under him, whether the will should be established or set aside, were summoned, and a trustee appointed by the court, to hold for those whose right should be finally established. The Act of Assembly adapted the remedy by partition, to the peculiar circumstances of the parties. That was all that was done in that case, and it was justified on the ground that, when a right exists without an adequate remedy, the legislature may provide one: 2 *Watts* 433.

But the case before us cannot be brought within the reasoning upon which any of the foregoing cases were supported.

There was no moral obligation here, to complete and perfect a defective conveyance to the school directors. Here were no parties acting in a fiduciary capacity, who needed an enlargement of powers for the benefit of those whom they represented. No right existed here, lacking a remedy which the legislature alone could supply. But it was simply an authority to strangers, to seize and sell an estate under no obligation or necessity to be sold. It was a legislative repeal of a private citizen's will. What becomes of the testamentary power of appointment conferred on his widow by Dr. Shoenberger? The act does not in terms nullify that. If it exist still, it may be exercised notwithstanding the act. But if it be said, that she has surrendered it by her conveyance, then her children and grandchildren can never take by her appointment, and the fee vests absolutely in the testator's heirs, subject only to the widow's life estate. These heirs are not parties to this proceeding, and they had no notice of the legislation in question.

An Act of Assembly passed the 13th May 1857, seems to have required notice to be given of the application to the legislature for a law of this sort, but its provisions were disregarded.

I see not how the heirs of Dr. Shoenberger shall be concluded after the death of his widow. If they are referred to the Act of Assembly, they will have a right to say two things of it:—

1st. That it was not in the nature of legislative power to take their private property for no public use, and sell it to whom trustees of legislative nomination might choose to convey it.

2d. That if it was in the nature of a legislative power, the exercise of it was expressly prohibited by the 9th section of the bill of rights, which declares of a person accused of crime, that he cannot be deprived of life, liberty, or property, "unless by the judgment of his peers, or the law of the land."

It has been argued, that this is a clause of the constitution for the benefit of criminals. Undoubtedly it is. It was intended to prevent legislative confiscations of property, even where loyalty and allegiance had been abjured, or crimes against the state had

[Shoenberger v. The School Directors.]

been committed, and the correlative right of protection had thus been forfeited. So tender of private property is our constitution, that it enshrines it with life and liberty, and guards it, even in behalf of a criminal, from legislative invasion. How much more then, the property of the innocent, the absent, the ignorant, and the dependent. This constitutional provision will be applied by these heirs with all the power of a negative pregnant. They will argue with irresistible force that, if the property of a citizen who had forfeited the protection of society, could not be taken from him except in due course of law, much less could theirs, for their claims to protection had never been forfeited or impaired.

The expression, "law of the land," in this 9th article, does not mean such a rescript or decree as we have under consideration here, but a pre-existent rule of conduct that regards the whole community or whole classes of the community. Sales of lands for debt, for taxes, to effect partition, and to preserve estates of minors—fines and forfeitures as the penalties for crime—all these are modes of divesture perfectly constitutional, because general laws, prescribed for whole classes of persons, and therefore part of the "law of the land." But this special, individual, and unnecessary enactment, without constitutional warrant, is no part of "the law of the land."

Nor will the heirs, when they come to look after their rights, be concluded by the decree we are asked to make, for they were not made parties. In the language of Judge Rogers, in Bomberger v. Clippinger, 5 W. & S. 311, " we cannot warrant the estate to the purchasers, for no decision that can be now made, will conclude the vested rights of the children. When the time arrives that vests their rights in possession, the then Supreme Court will be at liberty to disregard our opinion as authoritative and binding on them. The remainder-men are not before us, except indirectly, nor were they represented before the legislature. They are, therefore, not concluded; for, although their rights are not expressly saved, the act binds none but the parties, as has been repeatedly ruled."

These observations are as appropriate here, as to the case in which they were made; and they show that we are sustained by authority, as well as by reason, and the letter of the constitution, in refusing to decree in favour of this title. See also, Rogers v. Smith, 4 Barr 101.

This Act of Assembly is open to all the animadversions that were made on like legislation, in Norman v. Hiest, 5 W. & S. 172, Brown v. Hummel, 6 Barr 86, Ervine's Appeal, 4 Harris 256, and is supported by none of those considerations and circumstances which have prevailed with the courts—too frequently, perhaps— to sustain legislation, that trenched hard on the constitutional rights of the citizen.

We are of opinion that a good title in fee-simple cannot be made under the Act of Assembly before us; and, therefore, the plaintiffs' bill is dismissed.