LOUISVILLE, NEW ORLEANS & TEXAS RAILWAY CO. *v.* WILLIAM
W. BLYTHE ET AL.

1. EMINENT DOMAIN.    *Charter of L., N. O. & T. Ry. Co.    Rights acquired by
   consolidation.*

   Under the act of March 3, 1882 (Laws, p. 1011), and the act of March 15,
   1884, amendatory thereof (Laws, p. 936), which authorized the Memphis
   & Vicksburg Railway Co. to consolidate with any other railroad com-
   pany incorporated under the laws of this state, the Louisville, New
   Orleans & Texas Railway Co., by the consolidation of said company with
   others, including the New Orleans, Baton Rouge, Vicksburg & Memphis
   Railroad Co., succeeded to the property of the latter company.

2. SAME.    *Legislative power.    Conveyance by guardian.    Act of 1882.*

   Section 2 of the charter of the last-mentioned company (Laws 1882, p. 920),
   providing that the guardian of any infant, *non compos* or insane person, may
   agree with said railroad company upon the damages to be paid for land
   of such ward taken by it, or release to it the claim or right of said ward
   to damages, dispenses with the necessity for condemnation of the land
   in cases where the guardian and the company can agree.

3. SAME.    *Legislative power.    Disposition of minor's property.*

   The enactment of such provision is not a usurpation of judicial power by
   the legislature, for, although jurisdiction of minor's business is by the
   constitution conferred on the chancery court, it still pertains to the legis-

lature, as *parens patriæ*, to prescribe rules and regulations for the management, superintendence and disposition of the property of those under disability.

4. SAME. *Due process of law. Notice to infant.*

> Nor is said statute objectionable because it does not provide for notice to minors whose lands are conveyed by their guardian. *Burrus* v. *Burrus*, 56 Miss., 92; *Bailey* v. *Fitzgerald, Ib.,* 578; *Johnson* v. *Cooper, Ib.,* 608.

5. SAME. *Release by guardian. Compensation sufficient.*

> Whether the provisions of said charter conferring on guardians the authority to release without consideration the right of their wards to damages is constitutional, as allowing the taking of private property for public use without due compensation, is not involved in this case, since it is shown that there was a valuable consideration for the conveyance of a right of way to the railroad company by the guardian—namely, the permanent maintenance by the company of a depot and station on the land.

FROM the circuit court of DeSoto county.
HON. JAMES T. FANT, Judge.

The case is stated in the opinion.

*Mayes & Harris*, for appellant.

Without particularizing the several sections of the constitution, which, it is claimed, the power sought to be vested in the guardian violates, we submit that the legislature, as *parens patriæ*, is vested with the power to protect citizens under disability. For a learned discussion of this subject, see 2 Story, Eq. Jur., § 1333; 10 Am. Jurist, 297. The latter is quoted with approval in *Williamson* v. *Williamson*, 3 Smed. & M., 715.

In England the power of parliament in such matters is upheld and justified on two grounds—(1) the special relation between the sovereignty and disabled subjects; (2) the reserved prerogative in government to provide for emergencies and intolerable complications. See 20 Wend., 436 and cases cited.

In America the doctrine is discussed and announced in 2

Peters, 627; 10 *Ib.*, 294; 16 *Ib.*, 25; 9 Wall., 295; 103 U. S., 613; 1 Story, 427; 12 Ala., 369; 4 Monroe, 91; 6 B. Monroe, 594; 10 *Ib.*, 495; 15 Wend., 436; 20 *Ib.*, 365; 19 N. Y., 460; 14 S. & R., 435; 2 Barr, 277; 31 Pa., 17; 16 Mass., 326; 7 Metc., 388; 3 Cush. (Mass.), 483; 11 Gill & Johns., 87; 33 Mo., 13; 47 *Ib.*, 205; 56 *Ib.*, 211; 16 Ohio, 251; 6 R. I., 296; 5 Ill., 127; 8 Blackf., 10; 51 Cal., 352; 18 Ark., 469; Cooley, Con. Lim., 117–122.    And, in our state, *Williamson* v. *Williamson, supra; McComb* v. *Gilkey,* 29 Miss., 146; *Boon* v. *Bowers,* 30 *Ib.*, 246.

The foregoing authorities establish the following propositions:

1. There is no constitutional requirement that the property of an infant shall be inseparably linked to him until his majority.    His property may be alienated under various conditions—in his support and education, in discharge of antecedent obligations, for better investment, for the furtherance of the public good, etc.

2. The duty and power to regulate the whole matter is a ministerial function of the legislature.    It has the right to depute this function to a court, but is not bound to do so.

3. It is for the legislature to determine when the emergency arises which demands action.    It is a question of policy, and not a question of power in the legislature.

4. The legislature may invest the appointee of the power with discretion in the premises.

The provision is not unconstitutional because it authorizes a release by the guardian.    An adult may waive his right to compensation in money; and the legislature may authorize a guardian to do the same.    He is not required to waive it; he is only empowered to do so.    11 Ark., 469; Cooley, Con. Lim., 214, 693.

The charter does not authorize the property of the ward to be taken for public use without due compensation.    This is not a case of actual exercise of the right of eminent domain, and divestiture of title thereby, but of contract or grant

made between parties. *Levee Commissioners* v. *Dancy*, 65 Miss., 335.

The provision of the constitution which confers full jurisdiction on the chancery court in minors' business, is not infringed. *Blake* v. *McCarthy*, 56 Miss., 654.

*Morgan & Buchanan*, for appellees.

The legislature did not intend to vest in the guardian authority to permit the railroad company to enter upon and take the lands of the wards. That right could only be acquired by condemnation according to the preceding section of the act. The legislature could not lawfully dispense with condemnation. *Levee Commissioners* v. *Dancy*, 65 Miss., 335.

Private property can be taken for public use only in three ways: (1) By grant from the owner; (2) by adverse possession, allowing enough to bar the owner; (3) by a condemnation followed by compensation. Appellants did not obtain the land in controversy by either of these methods.

The statutory provision in this case gives the guardian power to waive compensation for his ward's land. Appellants have not shown that they are successors to the right of the New Oreans, Baton Rouge, Vicksburg & Memphis Railroad Company in the premises. This being true, the grant to it, if valid, is that of an outstanding title, and defendant cannot set it up. *Griffin* v. *Sheffield*, 38 Miss., 359.

The act of 1882 (Laws, p. 1011), provides that the company to be formed by consolidation shall possess all the rights " which are now possessed by the companies" entering into such consolidation. This act was passed March 3, and on the 9th of March the New Orleans, Baton Rouge, Vicksburg & Memphis Railroad Company was incorporated. It is clear, then, that the latter company, not being in existence at the time the former statute was passed, did not possess any of the rights. Not having acquired such franchises, the appellant company did not carry such rights into the consolidated company formed under the amendatory act of 1884.

The provision of the statute in question is in conflict with the constitution, in that it deprives the ward of his property without due process of law, and because it is a usurpation by the legislature of judicial power, inasmuch as the chancery court is given by the constitution full jurisdiction in minors' business. In support of this view, see *Brown* v. *Levee Commissioners*, 50 Miss., 468; *Jones* v. *Perry*, 10 Yerger, 59; *Lane* v. *Dorman*, 3 Scam., 238; 23 Pa., 34.

Argued orally by *Edward Mayes*, for appellant, and *A. S. Buchanan*, for appellee.

FRANK JOHNSTON, Special Judge, delivered the opinion of the court.

On the 15th day of May, 1884, Mrs. Blythe, as the guardian of her two minor children, conveyed by deed the right of way through the lands of her wards, to the New Orleans, Baton Rouge, Vicksburg & Memphis Railroad Company, the consideration expressed in the deed being for the sum of one dollar, and the further condition that the grantee, the railroad company, should establish and maintain a depot and section-house and tank on the land.

The minors owned the land in common with Mrs. Blythe, their mother, and three other adult tenants in common, all of whom joined in the conveyance to the railroad company.

The second section of the charter of the New Orleans, Baton Rouge, Vicksburg & Memphis Railroad Company (Laws 1882, p. 920), after providing that the company could own a right of way acquired by purchase, grant or devise, and also the mode and manner by which the right of way could be taken by condemnation proceedings, concludes with the following provision: " When any land, to be taken for the purposes aforesaid, shall belong to any infant, *non compos* or insane person having a resident general guardian, such guardian may agree with said company upon the amount of damages to be paid for taking such lands, or release to said

company his claim or right to damages in the premises." This charter was granted on March 9, 1882.

In 1870 the Memphis & Vicksburg Railroad Company was incorporated. By an act of March 3, 1882, the Memphis & Vicksburg Railroad Company was authorized to consolidate with the Mississippi Valley & Ship Island Railroad Company, and these to consolidate with any other companies, the consolidated company to enjoy all the rights and franchises conceded to the different companies entering into the consolidation. This act was amended by the act of March 15, 1884, so as to permit the Memphis & Vicksburg Railroad Company to consolidate with any other companies, whether the Mississippi Valley & Ship Island Railroad Company became a party to the consolidation or not.

In August, 1884, under the authority of these statutes, the Memphis & Vicksburg Railroad Company, the New Orleans, Baton Rouge, Vicksburg & Memphis Railroad Company, the New Orleans & Mississippi Railroad Company and the Tennessee Southern Railroad Company were consolidated, under the name of the Louisville, New Orleans & Texas Railway Company, this appellant.

The grantee in the deed of May 15, 1884, took possession of the land conveyed as the right of way, fenced the line, constructed its road, and established the depot, section-house and tank, which have, since the consolidation, been maintained by the appellant. In a word, up to the present time, the conditions of the deed have been performed.

Some time after the execution of the deed, Mrs. Blythe died, and the appellee, J. A. Jordan, was appointed guardian of the two minors, who brought the present ejectment suit against the appellant for the recovery of the two-fifths undivided interests of his wards in the land conveyed by their former guardian.

The plaintiffs as well as the defendant in the suit claim through G. L. Blythe, deceased, the father of these minors, as the common source of title, and the question of title in-

volved in the controversy depends alone upon the validity of the deed made for the minors by their former guardian on May 15, 1884.

The circuit court refused to grant a peremptory instruction directing the jury to find a verdict for the defendant, and, upon a verdict in favor of the plaintiff, the court rendered a judgment for the property and $250 damages by way of mesne profits, and thereupon this appeal was taken by the railroad company.

It is contended by counsel for the appellees that the appellant did not acquire the privilege or right conferred by the second section of the act of March 9, 1882, upon the New Orleans, Baton Rouge, Vicksburg & Memphis Railroad Company, for the reason that the statute authorizing the consolidation of the Memphis & Vicksburg Railroad Company with other companies was passed on March 3, 1882, six days prior to the incorporation of the New Orleans, Baton Rouge, Vicksburg & Memphis Railroad Company, and that the consolidating act, in so far as it gave the consolidated company the charter rights and franchises of the different consolidating companies, applied only to then existing companies.

The question whether the special franchise or privilege granted by the act of March 9, 1882, has been acquired by the appellant by its consolidation with the railroad company incorporated by this statute, and has thus become a part of its own charter, is not presented in this case, and is not necessary or proper to be decided, and upon which no opinion is expressed. The appellant does not so claim the property in controversy, but upon an entirely different theory. The New Orleans, Baton Rouge, Vicksburg & Memphis Railroad Company, during its corporate existence, acquired this right of way under the deed made by Mrs. Blythe, the former guardian, and in which it was the grantee, and the appellant claims this title derivatively, and by reason of its consolidation with that company, and as part of its property and assets. There can be no doubt that the consolidation, under the act of

March 3, 1882, and the amendatory act of March 15, 1884, vested in the new company the property and assets of all the consolidating companies, of which the New Orleans, Baton Rouge, Vicksburg & Memphis Railroad Company was one, and whatever title vested in the grantee by the deed, passed to this appellant.

It is argued in behalf of the appellees, that the guardian could convey under the authority of the last clause of the second section of the act of March 9, 1882, only after there had been a condemnation of the property, and an ascertainment of its value as provided in the preceding clauses of the section. This view is not a correct construction of the statute, which authorized the guardian to agree with the company upon the amount of damages, or release all claim to damages. Evidently this was intended as a distinct mode by which the company could acquire the right of way, and its purpose and effect was to dispense with the necessity for condemnation proceedings in this class of cases. The discretionary power was confided to the guardian of adjusting the damages with the railroad company, as was also the authority to decide whether it would be beneficial to the ward's estate to convey the right of way without any pecuniary or direct compensation or consideration. This, precisely as in case of a person *sui juris*, obviated the necessity for any condemnation proceedings.

The more important question presented in this case is, whether it was beyond the limits of legislative power for the legislature to confer upon guardians the authority to convey the right of way in the lands of their wards, as provided in the second section of the act of March 9, 1882.

The objections urged against the validity of this statute are: that it is a legislative usurpation of judicial power, full jurisdiction in minors' business having been confided by the constitution to the courts of chancery; that it provides no notice to the minor, who is the owner of the land, and, therefore, the method provided by this statute for taking private

property for public use, is not "due process of law;" and, finally, that it dedicates private property to public use without due compensation first being made to the owner.

These objections will be examined in the order stated.

The doctrine is firmly established by the great weight of American decisions, and sustained by the most cogent and unanswerable reasoning, that special acts of the legislature authorizing or confirming the sale of lands by guardians are constitutional when their object is simply to provide a change of investment, and not to divest the beneficiary of property rights, in the absence of special or exceptional constitutional limitations, and that such acts are not judicial, but the proper exercise of legislative power.

Such a power necessarily resides in the legislative department of the government, as *parens patriæ*, to prescribe such rules and regulations as may be proper for the management, superintendence and disposition of the property of infants, lunatics and persons who are incapable of managing their own affairs.

This principle was announced by Judge Story, who delivered the opinion of the supreme court of the United States, in *Wilkinson* v. *Leland*, 2 Peters, 660, a decision that was followed in the case of *Watkins* v. *Holman's Lessee*, 16 Peters, and also in *Hoyt* v. *Sprague*, 103 U. S., 613. In *Hoyt* v. *Sprague* Mr. Justice Bradley, delivering the opinion of the court, speaking of this class of statutes, said: "The passage of such laws is not the exercise of judicial power, although by general laws the discretion to pass upon such cases might be confided to the courts. But when it is not confided to the courts, the power exercised is of a legislative character, the legislature making a law for the particular case."

Such has been the uniform course of decisions in this state. *Williamson* v. *Williamson*, 3 Smed. & M., 715, was followed and affirmed in *McComb* v. *Gilkey*, 29 Miss., 146, and again in *Boon* v. *Bowers*, 30 Miss., 246.

The three cases cited by counsel for the appellees do not controvert the correctness of the principle as we have stated it.

The statute involved in the Illinois case of *Lane* v. *Dorman*, 3 Scam., 238, expressly adjudicated a debt in favor of a particular creditor, and directed a sale of the minor's lands for its payment. The court characterized the statute, for this reason, as in the nature of a judicial decree.

In the Pennsylvania case of *Schoenberger* v. *School Directors*, 32 Pa., 34, the statute before the court directed the sale, by two strangers, of land that had been devised to the testator's widow for life, with power of appointment by last will and testament to such persons as she might appoint, with remainder over to various specified persons, some of whom were minors. The court said the statute "was simply an authority to strangers to seize and sell an estate under no obligation or necessity to be sold. It was a legislative repeal of a private citizen's will."

. *Jones* v. *Perry*, 10 Yerger, 59, a Tennessee decision, proceeded on the construction of a special statute, which the court interpreted to adjudicate and determine the question of the debts for which the land was directed to be sold, and accordingly held the statute unconstitutional, on the ground that it was, in this respect, the exercise of judicial power. It will be seen that *Jones* v. *Perry* stands apart from the general constitutional doctrine, and rests alone upon the construction of the particular statute then being considered.

An opinion given by the judges of the supreme court of New Hampshire to the legislature of that state, reported in the fourth volume of New. Hampshire reports, stands alone and unsupported in its broad and unconditional denial of power in the legislature in this class of cases.

The constitution of Mississippi, it is true, invests the chancery courts with full jurisdiction in minors' business, but, having ascertained that the special power exercised in this class of statutes is legislative, and not judicial, it is evident that the legislature has not usurped in any respect the

powers or functions of the judicial department of the government.

So the former constitution of 1832 gave the probate courts jurisdiction in all matters testamentary and of administration and in orphans' business, but, by a long line of decisions, it was held that the power of those courts over the lands of decedents and infants was derived from legislative grant, and was, therefore, purely statutory, and not constitutional.

The power of determining controversies, of adjudicating debts and deciding questions of property and personal rights is purely judicial, but the delegation of the power of selling lands for the payment of debts that are to be ascertained and adjudicated by the courts, is not in any sense a judicial act but the exercise of legislative power.

The statute now under consideration contains two distinct features. It confers upon the guardian the authority to agree upon the compensation for the ward's land to be taken as the right of way, and also the authority to release all claim to damages and compensation.

In this case the deed was made upon an independent and valuable consideration, contained in the condition subsequent in the deed and running with the grant, that the railroad company should erect and maintain a depot and station on the land, a condition which has been performed. The deed is not voluntary and without consideration, but, on the contrary, its consideration may be of greater value than a money compensation for the strip of land taken as a right of way. The adult co-tenants evidently regarded it as of equal value to the land conveyed to the railroad company, and it can readily be perceived that such a consideration may not only be ample compensation for the right of way granted, but in many instances might far exceed the money value of the land granted to the railroad company as a roadway.

A conveyance on such a consideration is in no just or proper sense the dedication of private property to public use without

compensation.   The railroad company has stipulated to maintain this depot on the land conveyed by these owners, partly for their profit and convenience in receiving their supplies and shipping their crops, a full equivalent for the right of way.   This condition is not only a valuable but a continuing one, and upon its failure the land granted will revert to the grantors at their option, according to their original title.

If the legislature has the power to authorize a guardian to sell the lands of his ward for the payment of debts or the reinvestment of the proceeds, the power must exist to authorize a guardian to sell a part of his ward's plantation as a right of way, for the consideration of the erection and maintenance of a railroad station on the land, which, in actual value, is a fair compensation for the land conveyed, and which will be to the benefit, and not to the injury, of the infant owner.

There is no deprivation of property in such a case, but the conversion of its value from one form into another.   Such an arrangement amounts to direct compensation, not in money, but its equivalent, and the power wisely exercised, as it seems to have been in this case, would be to the interest of the minor.

We are unable to perceive any sound principle of constitutional law upon which the power delegated to this guardian, and exercised by him in executing this deed, has been violated or disregarded.

The objection that no notice to the minor is provided by the statute, cannot be sustained.   It is settled in this state, that notice to minors is not necessary in proceedings in the chancery court for the sale of lands derived from their ancestor.   *Burrus* v. *Burrus*, 56 Miss., 92; *Baily* v. *Fitzgerald*, *Ib.*, 578; *Johnson* v. *Cooper*, *Ib.*, 608.   And the same rule was announced by the supreme court of the United States in *Florentine* v. *Barton*, 2 Wall., 210.

The question is simply one of the power of the legislature to authorize the guardian to convey the land, and in none of the numerous cases of the class to which this be-

longs, has notice to the minor been regarded as essential in any respect.

We are of the opinion that the deed executed by the guardian in this case is legal and valid, and the statute, in so far as it authorizes a conveyance of the minors' land for a distinct and direct consideration, which is a fair and just compensation, whether for money or its equivalent, is within the limits of legislative power.

Whether the provision of the statute, permitting a guardian to release the damages and convey the right of way for no independent consideration, but solely in expectation of indirect and remote benefits flowing or resulting from the construction of the road as an improvement, is a question not involved in the case now under consideration, and upon that it is unnecessary to intimate an opinion.

From these views, it follows that the judgment of the circuit court must be—

*Reversed and the cause remanded.*

Hon. T. H. Woods, owing to enforced absence, did not participate in this decision, Frank Johnston, Esq., a member of the bar, was selected, by consent, to sit in his stead.