WHEELER *v.* SHOEMAKE, Sheriff.

In Banc. Feb. 18, 1952.

No. 38203 (57 So. (2d) 267)

**William V. Murray,** for appellant.

**Geo. H. Ethridge,** Assistant Attorney General, for appellee.

**Ethridge, J.**

This case involves the validity of Section 3 of the Youth Court Act of 1946, which vests exclusive, original

jurisdiction in all proceedings concerning any delinquent or neglected child under 18 years of age in the Youth Court Division of the Chancery Court, or where there is a County Court, in the Youth Court Division of the County Court. Miss. Laws 1946, Chap. 207; Miss. Code 1942, Sec. 7185-01 through 7185-30. We hold that it is valid.

Appellant, Ronnie Wheeler, a Negro boy, was indicted for grand larceny in the Circuit Court of Covington County. That county has no county court. At the time of the offense, May, 1950, appellant was 16 years of age. The indictment was returned in July, 1950. He became 17 years of age in January, 1951. He was charged with stealing a jersey cow, of the value of $40. It was charged that appellant was in the company of his brother at the time, who was 30 years of age, and it appears that the brother pleaded guilty and was sentenced. The circuit judge at the July, 1950 term asked appellant if he had an attorney or if he wanted one. Appellant replied that he desired one, and the court passed his case until the January, 1951 term. Appellant was released on a bail bond on November 23, 1950, and was out of jail from that time until the judgment of conviction in the second week of January, 1951 term. Appellant pleaded guilty at the January, 1951 term. He was then 17 years of age. He had no attorney, but he then advised the circuit judge that he did not want one, that he had decided to plead guilty, and that he understood what he was doing. The circuit court sentenced him to the maximum of five years in the state penitentiary at hard labor. This was on Wednesday of the last week of the January, 1951 term of the circuit court. On Saturday, the last day of that term, appellant, or his father, employed an attorney to represent appellant. He filed a motion in the circuit court to set aside the judgement and sentence of the court and to grant defendant a new hearing. That motion alleged that defendant was a juvenile, 16 years of age, and that defendant pleaded guilty in

ignorance of the consequences of his act, and that defendant was not guilty. However, these matters are not relevant here because no appeal was taken from the order overruling this motion. The circuit court heard testimony on this motion and overruled it. In the present habeas corpus proceedings, the testimony on the motion to set aside the final judgment of the circuit court was introduced by a certified copy of it.

Appellant, Ronnie Wheeler, then filed a petition for a writ of habeas corpus directed to Judge Hall of this Court. The petition averred among other things that at the time of the offense and of the conviction appellant was under 18 years of age; and by the amendment it was charged that "the judgment and sentence of the trial court are void for the reason that the trial court was without jurisdiction in the premises." And it prayed that a writ of habeas corpus be issued, the judgment be set aside, and appellant discharged. Upon this petition a fiat was issued returnable before Chancellor Patterson on February 17, 1951. Appellee, Dale Shoemake, Sheriff of Covington County, filed an answer admitting that he had appellant in custody under the final judgment of the Circuit Court of Covington County. To the answer he attached copies of the indictment, final judgment, motion to set aside final judgment, and order overruling it. Appellee did not deny specifically the averments in the petition as to the appellant's age. The hearing was held on February 20, 1951. Appellant testified among other things that he was 17 years of age at that time, and that he became 17 in January, 1951. He admitted that he told the circuit judge before he was sentenced that he did not want a lawyer, that no one connected with the court took any advantage of him, and that at the time he pleaded guilty, he did it knowing what he was doing. The circuit judge testified for appellee. He said that he offered appellant a lawyer and that appellant said he didn't want one, that he was going to plead guilty, and that appellant told the judge

that he fully understood what he was doing. The circuit judge said that he asked appellant at the January, 1951 term as to how old he was and appellant stated he was 17 years of age.

The chancery court found that appellant had failed to sustain any portion of his petition and "that the Circuit Court of Covington County, Mississippi, has full jurisdiction of Ronnie Wheeler in the trial had therein." The final decree dismissed the petition for a writ of habeas corpus, and from it Wheeler appeals. Appellant applied to the chancellor to be released on bail bond pending this appeal, but the chancellor denied that application.

## ISSUES ON THIS APPEAL

Appellant first says that where the proceedings before the circuit court are absolutely void for lack of jurisdiction, a writ of ██ ██ habeas corpus will lie for the purpose of attacking that judgment for want of jurisdiction, and that the circuit court had no jurisdiction over appellant in January, 1951 when he was convicted. The proposition that habeas corpus will lie to attack a judgment for want of jurisdiction is supported by the great weight of authorities. Maddox v. Bush, 1941, 191 Miss. 748, 4 So. (2d) 302; Code Sec. 2815; 25 Am. Jur., Habeas Corpus, Secs. 42, 78-83. Appellant further says that the Youth Court Act of 1946 grants exclusive, original jurisdiction over children under 18 years of age to the Youth Court Division of the Chancery Court, as it does under Section 3 of that act; that appellant was 16 years of age at the time of the offense charged and 17 years of age at the time of the judgment of conviction in the circuit court; and that the Youth Court had had no opportunity to consider this matter, so under the statute there was no jurisdiction in the Circuit Court. The applicable statutes will be reviewed subsequently.

In reply, the State says that no appeal was taken from the order refusing to set aside the judgment of the circuit court, and that judgment is final. This proposition is correct as to all matters raised in that action, except the jurisdiction of the circuit court. The State says that the circuit court had full jurisdiction under Section 156 of the Mississippi Constitution, which provides: "The circuit court shall have original jurisdiction in all matters civil and criminal in this state not vested by this Constitution in some other court, and such appellate jurisdiction as shall be prescribed by law."

It is stated that the judiciary articles of the Constitution vest fully all of the judicial powers of the State, and that the charge against appellant was a criminal charge vested in the circuit court under Constitution, Sec. 156. The State says that Secs. 3 and 15 of the Youth Court Act, in so far as they operate to deprive the circuit court of at least concurrent jurisdiction, violate Constitution, Sec. 156.

In response, appellant says that the Youth Court Act of 1946 does not infringe upon the admitted criminal jurisdiction of the circuit court; that it expressly creates a civil proceeding in a Division of the Chancery Court, as is stated in Sec. 8 of the 1946 act; that such proceeding is a civil proceeding not known at common law and is amply within the police powers of the State Legislature for the care, protection, and rehabilitation of delinquent children; and that as part of the police power, the Legislature is saying in effect that a child under 18 is not criminally responsible, unless the Youth Court Division of the Chancery Court first considers the matter and then transfers the cause to the Circuit Court under Sec. 15 of the act. The State, in its brief, does not undertake to answer the last stated arguments of appellant.

In order to analyze adequately the constitutional issues, it will be necessary to give some detailed consideration to the history and purposes of juvenile court legislation in Mississippi and elsewhere, and especially to

the present act, to the pertinent constitutional provisions and issues, and analogous precedents from Mississippi and elsewhere.

ANALYSIS OF MISSISSIPPI JUVENILE COURT STATUTES, THEIR PURPOSES AND BACKGROUND

A. The 1916 Statute

The first juvenile court act passed by the Legislature seems to have been Ch. 111, Miss. Laws of 1916, which was subsequently amended by Ch. 195, Laws of 1922, and was incorporated into Secs. 5697-5721 of Hemingway's 1927 Code. These sections were later incorporated in Miss. Code 1930, Secs. 7247 et seq., and Miss. Code 1942, Secs. 6744-6763, and were finally repealed by Laws of 1946, Ch. 207, and Laws of 1948, Ch. 429, Sec. 12. The 1916 law as amended in 1922 and as was in existence up to 1946, was in the Code chapter under "Industrial Training School". Hemingway's 1927 Code, Secs. 5697-5721. Sec. 5702 provided that any child less than 18 years of age, and not less than 7 years of age may be admitted to the Mississippi Industrial and Training School where the child had violated a law involving moral turpitude, and when a circuit judge or chancellor should certify that "such child is either immoral, delinquent, or incorrigible".

All proceedings under that act were by written petition to the chancery or circuit judge. Any reputable person having knowledge of a delinquent or destitute or abandoned child could file with the court clerk a verified petition setting out the facts. Summons must be served upon the parents or guardian to show cause why the child should not be adjudged to be a delinquent or neglected child. Sec. 5704. After a hearing, the judge could find the child to be delinquent, destitute, or abandoned, and could send such child to the Mississippi Industrial and Training School, or to any other institution willing to receive him "for an indefinite period of time",

or the court could release the child on parole or probation upon specified conditions, subject to supervision by the court, or by any person appointed by the judge. The court had the power to require the parents or guardian to do or to omit doing any acts which the judge might deem reasonable and necessary for the child's welfare. Sec. 5708 provided that a charge involving a child under 18 years could be transferred by any court to the chancery court, and Sec. 5709 provided that a chancery judge could remand the case to the circuit judge for investigation by the grand jury "if he deem it for the best interest of the state". No child shall be kept in the Industrial School after reaching the age of 21 years, at which time he was entitled to a discharge. Sec. 5714. The act did not affect the jurisdiction of the chancery court over minors, Sec. 5717, and appeals were allowed to this Court, Sec. 5720. The act as originally passed and up to the time of its repeal in 1946, was applicable to all children less than 18 years of age.

The 1916 law was discussed in detail and held valid in Bryant v. Brown, 1928, 151 Miss. 398, 118 So. 184, 60 A. L. R. 1325. This is a leading case in the country on the validity of juvenile court statutes, and is cited as such in all of the authorities. The controlling opinion was written by Judge George Ethridge, with a dissenting opinion by Judge Anderson. The minor, Howard Bryant, was 13 years of age. Mrs. Brown, appellee, a probation officer, filed a petition with the chancery court for the confinement of the minor as a delinquent child. The petition alleged that the child's general environment was such as was likely to develop criminal tendencies unless removed from his present surroundings; that he had committed felonious offenses including burglary, involving moral turpitude, and had many times been guilty of misdemeanors. The father and mother of the defendant were made parties to the petition along with the minor. Appellants filed a general demurrer to the petition, contending the 1916 act was unconstitutional, because it was

in violation of the personal rights and liberties of the child, and because it attempted to deprive a person of his liberty without due process of law, and without the right of trial by a jury. This demurrer was overruled, evidence was taken substantiating the allegations in the petition, and the chancery court committed Bryant to the Mississippi Industrial Training School as a delinquent child. On appeal, that decree was affirmed. The court on pages 413-414 of 151 Miss., on page 187 of 118 So. said:

"It will be seen from an examination of the above-cited sections that there are two schemes provided in the law for dealing with immoral, delinquent, or incorrigible children, or those who violate the law, either state or municipal, where such law involves moral turpitude, and instead of inflicting the punishment ordinarily inflicted for a violation of these statutes in proceeding under this statute, if the court proceeds to try the child in the circuit court under indictment for either misdemeanor or felony, the child has all the rights accorded to any other person violating the law, including jury trial and other incidents of criminal law. But if the court having jurisdiction of the misdemeanor or felony is of the opinion that the chancery court can better deal with the child, having regard to all the circumstances of the case, than the circuit court, the case may be transferred to the chancery court for proceedings under section 10 of the act. If the cause is so transferred to the chancery court for hearing, it proceeds according to the procedure of the chancery court, *and does not involve a prosecution for crime as such. In a case so transferred, the proceeding is changed from a criminal to a civil proceeding, and is governed by the rules of procedure in other civil cases.* But in either event, the court may inquire into the fact, and establish the fact by proof that the child has, in fact, violated the law of the state or of the municipality involving moral turpitude. *The proceeding in the chancery court is not for the purpose of inflicting punishment*

*or entertaining criminal jurisdiction.* It is the remedial proceeding designed to reform and educate the child into habits of industry, good morals, and conduct.

"Under section 5702(b), the proceeding may be, in the first instance, before a judge or chancellor, *and is not for the purpose of trying the delinquent, immoral, or incorrigible child for a specific crime,* but evidence of the commission of a specific crime is received and may be considered *for the purpose of determining whether the child is in fact immoral, delinquent, or incorrigible, and the proceedings under this statute are civil and not criminal.* It has no reference to enforcing the criminal law as such, but deals with the character of the child, and the environment in which it moves and lives, as the subject-matter of inquiry, and is established as any other fact in a civil suit.

"The Industrial Training School is not a punitive institution. It is in no sense a prison, but is an educational industrial institution, designed for the training of immoral, delinquent, incorrigible or abandoned children— to cause them to become moral and industrious. Its purpose is a beneficent one, often transforming a vicious and criminally inclined child into a moral, industrious, and useful citizen.

"The statute provides due process of law, and the proceeding is in a court conducted in accordance with law and having legal objects for its end."

On pages 415-416 of 151 Miss., on page 188 of 118 So. the Court said:

"But where the parents fail to perform their natural duty to so rear and educate the child as to make it a useful, intelligent, and moral being, but permit it to go unrestrained and to become vicious in its habits and practices, and a menace to the rest of society, *the state, as parens patriæ of all children, may assert its power and apply the curative,* so as to prevent injury to the child and to society by the negligent and wrongful con-

duct of the parents in failing to exercise the proper control and restraint over the child in its tendencies.

"In 31 C. J. at page 989, it is said: 'A juvenile court is a court having special jurisdiction, of a paternal nature, over delinquent and neglected children. *It is not a criminal court*; its practice and procedure not being governed by the rules applicable to proceedings strictly criminal, but rather by those applicable in civil cases.' "

In brief, in Bryant v. Brown, this Court specifically held (1) that a juvenile court is not a criminal court but a civil one; (2) that the Legislature has ample power under its police powers to classify the delinquent children and designate the chancery court to consider such issues; (3) designating children under 18 years of age as being subject to the act is a reasonable classification within the scope of the state's police power; (4) although the offenses with which the minor is charged include both felonies and misdemeanors, the legislature has the power to designate such offenses as subject to the civil jurisdiction of a juvenile court; (5) such an act does not violate any provisions of the constitution, and does not violate the right of trial by jury; (6) and by such legislation the state is exercising its police powers as parens patriæ of the child, and such a procedure is a remedial proceeding designed to reform and educate the child, is of a curative and not a punitive character, and is of a salutary and favored nature and amply within the police powers of the State. Bryant v. Brown has not been overruled and represents a well-seasoned and controlling analysis of the basic issues presented in the present case.

In Holden v. Smith, 1924, 135 Miss. 322, 100 So. 27, the Court held that the evidence was insufficient to support the commitment. In Yarborough v. Coulter, 1931, 162 Miss. 50, 138 So. 591, the petition did not set forth the names of the parents or state that they were unknown, as the statute required, and hence the commitment was held to be improper. In Mahaffey v. Mahaffey, 1936, 176 Miss. 733, 170 So. 289, a commitment under the 1916 act

was affirmed. In Maddox v. Bush, 1941, 191 Miss. 748, 4 So. (2d) 302, the commitment was held to be void because no process was served upon the minor. It appears that the Court consistently upheld the validity of the 1916 act, but strictly insisted upon the existence of jurisdictional facts.

## B.  The 1940 Juvenile Court Act

Chapter 300, Laws of 1940, Code of 1942, Secs. 7185-7213, was the second Mississippi Juvenile Court Act. It was repealed by Laws of 1946, Chap. 207, Sec. 27. Its plan was substantially the same as that under the present, 1946 act, except that it did not give the chancery court exclusive, original jurisdiction. It created a juvenile court department of the chancery court, circuit court, and county court, and gave each original jurisdiction over delinquent, dependent, and neglected children, meaning any child under 18 years of age. Any person interested could demand a jury as in other cases. Any reputable citizen could file a petition calling to the court's attention the fact that a particular child was delinquent or neglected, following which there would be a hearing and the court could award the custody of the infant, if the facts warranted, to an institution or an individual to whose care it might be committed. The act provided for the separate incarceration in jail of a child pending the hearing, apart from adults held on criminal charges.

Sec. 7199 provided that if a child was arrested on a charge and taken before a justice of the peace or police court, he must be taken directly before the juvenile court and "it shall be the duty of such justice of the peace or city judge to transfer the case to said juvenile court * * *." No person could be committed or retained under such an order of the juvenile court if he was over 21 years. The juvenile court, when it deemed proper, could order a child to be prosecuted under the criminal laws, but under Sec. 7203 "no child under eighteen years of age shall be so prosecuted without such order being

first so entered''. Sec. 7203 expressly provided that ''no child under the age of fourteen shall be proceeded against criminally.'' Under Sec. 7204, the circuit court had the power in its discretion to order a dismissal of a felony prosecution, and the same section expressly provided that ''No child under the age of fourteen shall be proceeded against criminally.'' Section 7205 provided that the act was to be liberally construed to carry out its purposes, the welfare and interest of the child. Appeals could be taken as provided by law for appeals in civil cases, Sec. 7207. The juvenile court could sit in chambers in its discretion. Sec. 7211 provided that nothing in the statute should be construed as abridging the jurisdiction of the chancery court.

It should be noted that the main difference of the 1940 act from the 1946 act is that under the former the county, circuit, and chancery courts all had juvenile court departments, while today that jurisdiction is confined to the Youth Court Division of the County Court, and where no County Court is maintained, to the Youth Court Division of the Chancery Court. And under the 1940 act, whether the circuit or county judge would transfer to the Youth Court a child between 14 to 17 years inclusive charged with a crime was within his discretion. The 1940 act gave him no discretion as to a child under 14, who was not criminally responsible; in the present act, such age limit is under 13 years.

The 1940 act was consistently upheld by this Court in a number of cases. In Parker v. State, 1943, 194 Miss. 895, 13 So. (2d) 620, a minor boy 16 years of age was convicted of murder. The circuit judge had refused to dismiss the prosecution and commit him to the juvenile court. This was held not to be an error, because under the 1940 act, as to a child of that age, committal to the juvenile court was placed in the sound discretion of the circuit judge. In Williams v. Bush, 1946, 199 Miss. 382, 24 So. (2d) 863, 864, the two appellant children appeared in the county court charged with petty larceny and

pleaded guilty. The county court acted as a juvenile court and then committed them to the Columbia Home until they became 21. The appellants were then 13 years and 5 months old. They then filed a petition for habeas corpus, which was denied, and the denial was affirmed here. We held that the juvenile court had full jurisdiction and no actual conviction of the minor was necessary. The Court said that "No criminal sentence was imposed upon them. *The Court here was acting not as a criminal court strictly speaking, but as a Juvenile Court,* possessing large discretion as to what should be done with the delinquents."

In Farr v. State, 1946, 199 Miss. 637, 25 So. (2d) 186, the appellant Farr was convicted of murder and sentenced to life imprisonment. He assigned as error the refusal of the circuit court to transfer the case to the juvenile court. At the time of the commission of the offense, appellant was 16 years of age, but was 18 years at the time of the trial. The court said that the better and majority rule is that the age of the child at the time of the trial rather than at the time of the offense controlled under the 1940 act in determining whether the juvenile court had jurisdiction. It observed, moreover, that where the child was over 14, as was the case there, the transfer to the juvenile court was in the discretion of the trial judge.

Lewis v. State, 1946, 201 Miss. 48, 28 So. (2d) 122, 123, involved a situation where the appellant was convicted of murder and sentenced to death. He assigned as error that the circuit court refused to transfer the case to the juvenile court. He admitted he was under 18, and apparently was over 13, although the record on this is not clear. The court cited the various constitutional sections hereinafter discussed, and said that if the 1940 act is construed to apply to a juvenile offender charged with a capital offense, it would be unconstitutional under Sec. 29 dealing with bailable cases, but that the statute did not apply to a capital case. It pointed out that before the indictment against appellant was obtained, "the district

attorney had sought and obtained permission of the Juvenile Court to prosecute appellant in the circuit court for murder, under Sections 7204-5-6''.

In McGinnis v. State, 1947, 201 Miss. 239, 29 So. (2d) 109 appellant was convicted of assault and battery with intent to kill, and the conviction was affirmed. He was less than 18 years of age, and petitioned the trial court to transfer the case to the juvenile court. Denial of this was held not to be error, because Sec. 7204 placed it within the discretion of the circuit court to transfer the action to the juvenile court. The court pretermitted passing upon whether or not that part of the 1940 act, Sec. 7203, requiring an order from the juvenile court in order for a child to be prosecuted for a misdemeanor was valid.

In fine, the Court in a number of cases sustained the validity of the 1940 Juvenile Court Act. However, whether the case should be transferred under that act was within the discretion of the circuit court. Yet this Court clearly recognized the salutary purposes of a juvenile court act, and the fact that such legislation is a legitimate exercise of the police powers of the state.

### C. The Present 1946 Youth Court Act

In 1946 the Mississippi Legislature enacted Ch. 207 of the Laws of 1946, being Code of 1942, Sec. 7185-01 through 7185-30. Sec. 27 of that statute repealed the old 1940 Juvenile Court Act, which was Ch. 300, Laws of 1940. The 1946 act removed any juvenile court jurisdiction of the circuit court, and vested it exclusively in the youth court division of the chancery and county courts. It gave the Youth Court exclusive, original jurisdiction over delinquent and neglected children. And it clearly classified the Youth Court's jurisdiction as of a civil nature.

Section 1 provides: ''That a youth court division be and the same is hereby created as a part of the county court of each county now or hereafter having a county court, and a youth court division is hereby created as a

part of the chancery court of each county in which no county court is maintained."

Section 2 provides that a child or youth means a person who is less than 18 years of age. It defines a "delinquent child" as a juvenile offender not less than 10 years of age whose behavior, environment, associations or actions are injurious to his welfare or the welfare of other children, with additional detailed definitions. It defines a "neglected child" as a child whose parents or guardian neglect or refuse to provide for him proper care, support, education, and medical service, with additional detailed definitions. Sec. 3, the provision which is here in issue, provides: "Except as otherwise provided herein, the court shall have exclusive original jurisdiction in all proceedings concerning any delinquent or neglected child residing or being in the county."

Section 4 provides in part: "When jurisdiction shall have been obtained by the court in the case of any child, jurisdiction of such person as well as of any offenses by him committed may be retained or resumed by the court until he becomes twenty years of age."

Under Section 5 the proceedings are instituted by a petition to the Youth Court. Summons must be served on the parents or guardian and the child. Sec. 6. Under Section 8, the Youth Court is in session at all times, "and all cases of children shall be heard separately from the trial of cases against adults, and at any place which the judge deems suitable, and without jury". The hearing must be conducted in an informal manner and *"No proceedings by the court shall be a criminal proceeding, but shall be entirely of a civil nature* concerned with the care, protection, and rehabilitation of the child in question."

Under Sec. 9, if the court finds that the child is neglected or delinquent under the act, it shall so decree, and may either place the child under the care of a relative, or in a suitable private institution or in a state supported training school, and the custodian may retain custody of

said child "until he has attained his 20th birthday but for no longer." Sec. 9 then provides: "No decree or order of adjudication concerning any child shall recite any of the facts or circumstances upon which such adjudication is based, nor shall it recite that a child has been found guilty; but it shall only recite that said child is found to be a delinquent child or a neglected child as the case may be. * * *

"No adjudication upon the status of any child shall operate to impose any of the civil disabilities ordinarily imposed by conviction of adults, *nor shall any child be deemed a criminal by reason of such adjudication;* nor shall such adjudication be deemed a conviction. The disposition of a child or any evidence given in the court in any proceedings concerning him shall not be admissible against the child in any case or proceeding in any other court, nor shall such disposition or evidence be held against the child's record in any future school or college enrollment, nor operate to disqualify the child in any future civil service application or appointment."

Sec. 10 provides that the court may require the parent or guardian to pay money necessary for the support of the child who is in custody of others, and they may be proceeded against for contempt for failure to do so. Sec. 11 provides for a physical and mental examination of the child within the court's jurisdiction. Under Sec. 12, the court may require the parent or guardian to do or omit to do any acts reasonable and necessary for the welfare of the child, and failure to comply shall be contempt of the court. Any parent or guardian or any other person who wilfully commits or omits any act which contributes to the neglect or delinquency of any child or aids him in escaping from the custody of the court shall be guilty of a misdemeanor, with the right of trial by jury. Sec. 13. This section was considered and upheld in the recent case of Broadstreet v. State, 1950, 208 Miss. 789, 45 So. (2d) 590.

Under Sec. 14, the chancery court may appoint the chancery clerk or other suitable person to act as a regular or special referee for hearing a Youth Court case. Sec. 15 provides: "If a child thirteen years of age or older is charged with an offense which would be a felony if committed by an adult, the court, after full investigation, may, in its discretion, retain jurisdiction and proceed with the case as a delinquency case, or certify such child for proper criminal proceedings to any court which would have trial jurisdiction of such an offense if committed by an adult, and may fix the amount of bail, except that the circuit court shall have exclusive jurisdiction of such child if he be charged with any crime which, upon conviction, is punishable by life imprisonment or death."

Sec. 16 provides: "Whenever any child thirteen years of age or older is brought before any justice of the peace court or municipal court charged with the commission of a misdemeanor under a state law or municipal ordinance, such court shall, unless prosecution is permitted by order of the youth court, transfer the case to the youth court of the county, to be dealt with as a case of delinquency in accordance with the provisions of this act, * * *."

Sec. 17 provides: "No child under thirteen years of age shall be prosecuted criminally for a misdemeanor or a felony, but such case must be handled by the youth court."

Under Sec. 19, "If any child shall be convicted by any circuit court as provided under this act", the trial judge may, in his discretion, commit the child to any state institution or suspend sentence and release on probation, under such conditions as he may prescribe. The "circuit judge may before or during or after said trial remand said cause to the youth court for further proceedings therein or handling thereof." Sec. 20 provides for records of the court, and Sec. 21 provides that, with the approval of the Board of Supervisors, the Youth Court may in any county appoint a Youth Counsellor, to perform such services for the court as may be required. The

technical services of the State Department of Public Welfare may be utilized. Secs. 21-22. Appeals may be taken directly to the Supreme Court. Sec. 24.

Sec. 25 states that "Nothing herein contained shall be construed as abridging the power and jurisdiction of the chancery court * * * exercised over the estates of minors * * *." The Legislature in Sec. 26 states its basic purposes: "This act shall be liberally construed to the end that each child coming within the jurisdiction of the court shall receive such care, guidance and control, preferably in his own home, as will conduce to the child's welfare and the best interest of the state, and that when such child is removed from the control of his parents the court shall secure for him care as nearly as possible equivalent to that which should have been given him by them."

It will be noted that this statute represents a broad and comprehensive plan by the Legislature for the prevention and rehabilitation of delinquent and neglected children. It represents the considerable thought and work of a large number of Mississippi citizens, state officials, lawyers, and laymen. That history is outlined in a speech by Catherine Bass in "Function of the Children's Code Commission", 17 Miss. Law Journal 443 (1946). On pages 443-446 she said:

"At the 1944 session of the Mississippi Legislature there was appointed thereby an interim joint Senate and House Committee on Child Welfare Legislation. This Committee by virtue of authority then conferred on it by the Legislature visited with, and reviewed in part the work of the various institutions, agencies, and administrative departments, of the state government charged by law with the care, control, protection, and rehabilitation of children. One of the results of their study was that this Committee together with the State Board of Public Welfare requested Governor Bailey to appoint a special commission of interested citizens of the state to continue the study and review of the conditions and laws then

existing in the state that affect the welfare of children, with the view of recommending what action might be taken by the State Legislature that would provide a legal framework for the amelioration of the conditions existing. (Since this audience is largely composed of lawyers you may be interested in the fact that two-thirds of the members of this Legislative Committee, as well as the State Board of Public Welfare, are lawyers.)

"Pursuant to this request, Governor Bailey appointed eighty persons representing the various public and private agencies in this state concerned with the promotion of the welfare of children, to serve in a voluntary capacity as the First Mississippi Children's Code Commission. The then president of the Mississippi State Bar as such, as well as several other lawyers and judges in their capacity as representatives of such an interested agency, were members of this Commission.  *  *  *

"As a result of the study, research, and other work, of the Commission, from October 22, 1945, its first meeting, to the end of the 1946 Session of the Mississippi Legislature, certain recommendations were made to Governor Bailey and the Legislature, which were grouped as follows:

"I. Support for increased appropriations for public agencies and institutions in the state charged by law with the care, protection, or rehabilitation of children;

"II. Legislation proposed for passage at the 1946 session of the State Legislature;

"III. Matters needing further study.

"These recommendations led to the following results:

"With respect to Item I: The appropriations were increased to some extent in each instance supported.

"With respect to Item II: Three specific bills were drafted at the direction of the Executive Committee of the Commission, introduced and passed with some amendments. These three bills were:

"1. The Youth Court Act—HB 15, Miss. Laws 1946;

"2. The administration of Child Welfare Act—HB 512, Miss. Laws 1946;

"3. Creation of a Children's Code Commission by Legislative Enactment—HB 857, Miss. Laws 1946.

"The first two Acts mentioned, that is, the Youth Court Act and the Administration of Child Welfare Act, were drafted so as to provide for, not only the legal framework for the areas of the subject matter covered therein, but so as to tie in with and support, and in turn be bolstered by the subsequent legislation which the Commission envisioned would be drafted and proposed as a result of the future work of such a Commission as provided for by HB 857, dealing with such subject matters as those recommended by the Commission for further study. This with the view that the legislation pertaining to children passed at the present and future sessions of the State Legislature might be parts of a consistent unified whole, for the establishment, administration, and enforcement, of minimum standards for the adequate care and protection of the children in the state in the areas of their need.

"It was recognized by the Commission that legislation is not the sole nor complete answer to the needs of any classification of children, but that a legal framework is a necessary basis for the implementation, the administration, the enforcement, and the fulfillment of the concept of parens patriæ accepted by this state from the old English Equity Law, the since-developed and present-day case law, as well as the constitution and state statutes, all now prevailing in this state. Thus the philosophy underlying the work of the State in these areas of legislation is based on this concept: to-wit, that the State recognizes its duty as parens patriæ to protect its children who need its protection from a harmful environment, neglect, dependency, and harmful habits of the children; and, to provide the resources possible at this time to afford the care, protection and rehabil-

itation indicated for the physical, mental, emotional and moral well-being of its children.

" * * * A thoughtful reading of the entire Act will tend to point out that it is drafted so as to afford the Youth Court and its attendant personnel the opportunity to discover within their limitations: first, the cause of the indicated delinquency, or neglect of the child before the court; and, second, to use all possible resources and services available under the Act and in the State Community to aid in removing these causes and meet the needs of the child for its future well-being and affirmative adaptation to, and as an integral part of, a constructive Society. We might well say that this is one way of wording the general purposes and intent of this Act. These purposes are brought out by the *basic concept of the statute, which is, that the court proceedings thereunder are of a civil nature by the state in the interest of the child, as opposed to criminal proceedings by the state against the child;* the terminology used in developing this concept; the nature of the hearing, adjudication, and placement and status of the child; the social services available as aids to the court at the request of the court from youth counsellors, the State and County Departments of Public Welfare, and all societies, organizations, and agencies having for their object the protection and aid of children. * * *

"Thus we see that these two Bills seek to provide the legal framework for the state's action, to provide through its already established agencies, some measure of care for those children who are wards of the state, or who are in need of special care by the state; that is, those children who may be deemed to be delinquent, or neglected or dependent, or in danger of becoming delinquent."

County Judge William Haralson, in an article entitled "Mississippi's New Youth Court Act", 17 Miss. Law Journal 449 (1946), said:

"When war-time delinquency struck our present juvenile court set-up, it began to come apart at the seams. Before analyzing this new Act I wish to tell you something of the efforts made to cope with this situation.

"The first organized group to meet the challenge of growing juvenile delinquency was the Mississippi Association on Delinquency and Crime. Some five or six years ago Mr. Edwin B. Zeigler, Federal Probation Officer, of Gulfport, organized this Association. Judge L. C. Corban, of Biloxi, served as its first president. Its purpose, as stated in its Constitution, is 'to coordinate the efforts of persons interested in the prevention and control of delinquency among children and of crime among adults.'

"The approach of this Association to the delinquency problem was to appoint a committee to study juvenile court legislation. Judge Luther Manship, County Court Judge of Hinds County, was chairman. He provided patient and intelligent leadership. It would be amiss not to mention others who contributed so much to the enactment of this new Youth Court Act. Among them are Mrs. Zelma Price, of Greenville, and Miss Catherine Bass, of Jackson, both members of our profession. Oddly enough, it was the skill of a blind member of the legislature, Hon. Icey Day, from Attala County, which helped so much to guide this bill through the reefs and shoals of legislative waters. * * *

"It is the consensus of opinion that our law makers have turned over to us a fine piece of legislation. But, of course, there is no law which will administer itself. There is yet much work to be done. We judges will need to study this new act as it applies to our particular court. Also, the District and County Attorneys must assume their full responsibility. The diligence and competency of the Youth Counsellors and others who undertake to advise the court in applying this law will have much bearing on the results to be achieved. If we but match the interest and efforts of those who prepared

and passed the new Youth Court Act, there is every reason to believe it will be successfully administered."

As stated above, in addition to the Youth Court Act, two other statutes were passed by the legislature in 1946, designed to constitute a comprehensive approach to the prevention and rehabilitation of juvenile delinquents. The second act was the Administration of Child Welfare Act. Ch. 419, Laws of 1946, being Code of 1942, Secs. 7170-01 through 7170-06. That statute makes it the duty of the State Department of Public Welfare to administer and supervise all public child welfare services with which the county departments of public welfare are charged and to care for delinquent and neglected children. It gives certain powers to the county department of public welfare and the board of supervisors to finance these functions. Many of them would be supplementary to and in assistance of the work of the Youth Court. See Code of 1942, Secs. 7169-7184, which deal with the duties of the state and county departments of public welfare with reference to child welfare and dependent children.

The third statute passed at the 1946 session as part of this legislative attack upon juvenile delinquency was the Children's Code Commission Act. Ch. 451, Laws of 1946, being Secs. 7170-11 through 7170-16. The Children's Code Commission consists of nine members appointed by the Governor, with the duty of making a continuing study of the conditions in the state affecting the welfare of children, the functions and facilities of various agencies and institutions charged with their care, control, protection and rehabilitation, and the present laws pertaining to and affecting children. The commission is directed to make a report to the Governor and Legislature at each regular session, and to make recommendations for specific legislation.

These three acts represent a legislative attempt to deal with the rehabilitation of juvenile delinquents.

The only cause to date interpreting the jurisdictional aspects of the 1946 Youth Court Act is Gatlin v. State, 1949, 207 Miss. 588, 42 So. (2d) 774, where the Youth Court under Section 15 certified the minors for criminal proceedings to the Circuit Court.

STATUTE IS WITHIN STATE'S POLICE POWER

Appellant took no appeal from the order of the circuit court refusing to set aside his plea of guilty and judgment of conviction. The only issue that he can and does raise here in this habeas corpus proceeding is that the circuit court was without jurisdiction to convict him because at that time he was 17 years of age. Whether the Circuit Court had jurisdiction depends upon the validity of Sec. 3 of the 1946 Act, which provides that the Youth Court "shall have exclusive original jurisdiction in all proceedings concerning any delinquent or neglected child". Such a child, under Sec. 2(c), means a person who is less than 18 years, and under Sec. 2(g) is a delinquent child. Appellant clearly comes within the provisions of Secs. 2 and 3.

Appellee attacks those statutes and says that, to the extent that exclusive, original jurisdiction of youthful offenders is vested in the Youth Court, they are violative of Sec. 156 of the Mississippi Constitution. The appellee's argument is that the judiciary provisions of the Constitution, Secs. 144-177, represent a complete vesting in the courts created under the Constitution of all conceivable judicial power; that this is evidenced by Constitution Sec. 24, which provides that every person, for an injury done him, shall have a remedy; that under Sec. 156 the circuit court has original jurisdiction in all matters civil and criminal not vested by the Constitution in some other court, and that the Constitution does not vest criminal jurisdiction in any court other than the circuit court; that Sec. 144 vests the judicial power in the Supreme Court and such other courts as are provided for in this Constitution; that the legislature has

no power to create a Youth Court with exclusive, original jurisdiction over youthful offenders; that such a statute violates the terms and purposes of Article VI of the State Constitution and particularly Section 156.

However, we think the act represents a legitimate exercise of the police power of the State. It is a sincere and in many respects realistic attempt to begin to cope with the serious contemporary problems of juvenile delinquency.

The entire basis of the attack by the state upon the validity of the statute in this case is that it violates Sec. 156. The argument is that appellant is charged with a criminal matter and a felony, that original jurisdiction over such felonies is vested in the circuit court under Sec. 156, and that the legislature cannot make a felony a civil matter simply by calling it one. But this argument is erroneous for several reasons: (a) The Legislature is acting well within its constitutional police powers in determining the age at which a person becomes responsible under our criminal laws, and the Youth Court Act in effect and in part says that a person under 18 years of age is not criminally responsible unless the Youth Court first investigates fully and, after a judicial determination that the child's welfare and the public interest will be best served by a criminal prosecution, certifies the case to the circuit court; (b) appellant can not be charged for a crime in a criminal prosecution, but must be proceeded against in the Youth Court in a civil matter, not known at common law, and, therefore, not within the restrictions of Constitution Sec. 156; (c) the Legislature was acting within its constitutional police powers in placing exclusive, original jurisdiction in a youth court division of chancery courts, for the additional reason that this matter is one of "minor's business", of which chancery courts have "full jurisdiction" under Constitution Sec. 159(d); and (d) the preceding propositions are almost unanimously supported

by the authorities and cases, both in Mississippi and elsewhere.

Constitution Sec. 156 is limited by its terms. It vests original jurisdiction over civil and criminal matters in the circuit court which are "not vested by this Constitution in some other court  *  *  *  ." Such original jurisdiction in "civil" matters is confined to matters which were of a common law nature, that is, to matters which were known at common law. This was expressly held in Bell v. City of West Point, 1875, 51 Miss. 262, and by manifest analogy this same restriction as to the right of trial by jury was applied to Constitution Sec. 31. That section secures the right to a jury trial in all cases at which a jury trial at common law was necessary, but it does not extend to questions in the trial of which is not necessary by common law. Isom v. Mississippi Central Railroad Company, 1858, 36 Miss. 300; Aldridge v. Bogue Phalia Drainage District, 1913, 106 Miss. 626, 64 So. 377. Hence matters civil under Sec. 156 does not comprehend civil matters involving the Youth Court, which indisputably were not known at common law.

Moreover, Sec. 156, giving the circuit court original jurisdiction in criminal matters, does not operate as a restriction here because the Legislature has expressly provided that matters involving the Youth Court are civil and not criminal matters. Section 8 expressly says that "No proceedings by the court shall be a criminal proceeding, but shall be entirely of a civil nature concerned with the care, protection, and rehabilitation of the child in question." Sec. 9 then provides that no decree of the Youth Court shall recite any of the facts upon which it is based, nor recite that the child has been found guilty, but only that he is delinquent or neglected. And it further provides that "No adjudication upon the status of any child shall operate to impose any of the civil disabilities ordinarily imposed by conviction of adults, nor shall any child be deemed a criminal by reason of such adjudication; nor shall such adjudication

be deemed a conviction''. It further provides that such adjudication shall not be admissible evidence against a child in any court or disqualify him for the future in any way.

In 1920, in Bryant v. Brown, discussed above, this Court expressly adjudicated that the 1916 act was a valid exercise of the Legislature's power to designate such a proceeding as civil. Most of the other states have juvenile court statutes. It has been uniformly held that the proceedings are civil in nature. 31 Am. Jur., Juvenile Courts, Sec. 8.

Hence the terms of Constitution Sec. 156, when considered alone, are not a prohibition of Sec. 3 of the act. But the appellee suggests that the Legislature has no constitutional power to provide that youths under 18 are not subject to criminal laws of this state, unless the Youth Court first so adjudicates. This argument is separate and apart from the asserted restrictions of Sec. 156. In other words, it is argued that the Legislature has not a sufficient interest in the welfare of the children of the state to create a Youth Court to care for anti-social acts of delinquent and neglected children, even though it is not prevented by the terms of Sec. 156 from doing so; and that, furthermore, the setting of the applicable age limit up through 17 years of age is an unreasonable classification.

It should first be noted that Constitution Sec. 172 provides: ''The legislature shall, from time to time, establish such other inferior courts as may be necessary, and abolish the same whenever deemed expedient.''

When the Legislature created county courts and gave them concurrent jurisdiction with circuit courts in many cases, it was not dealing with a subject matter which is of a peculiar nature and which concerns persons under disabilities, such as does the Youth Court Act. Yet it was held that the Legislature had ample power to give the county courts concurrent jurisdiction with circuit and chancery courts in specified particulars. State ex rel.

Knox v. Speakes, 1926, 144 Miss. 125, 109 So. 129, 133. The court there quoted with approval from Thomas v. State, 1840, 5 How. 20, in which the Criminal Court Act was held valid, and from Houston v. Royston, 1843, 7 How. 543, in which the District Chancery Court Act was held valid. The Speakes opinion, quoting from Houston v. Royston, said that experience suggests changes in a judicial system, and that the constitutional convention did not intend to preclude them. Referring to a section similar to the present Constitution Sec. 172, it was said: "Such a provision indicates that the (constitutional) convention thought that it might be convenient and proper to make some changes in the judicial system. Nothing else could have induced such a provision. And it must have been the design to clothe the Legislature with power to make such changes." See also Ex parte Tucker, 1932, 164 Miss. 20, 143 So. 700.

With reference to the scope of the police powers of the State, Constitution Sec. 33 vests the Legislature with such powers. Sec. 1 provides that the powers of the government are divided into three distinct departments, and that those which are legislative are delegated to the Legislature. Sec. 5 states that "All political power is vested in, and derived from, the people * * *." Sec. 6 provides: "The people of this state have the inherent, sole, and exclusive right to regulate the internal government and police thereof, and to alter and abolish their constitution and form of government whenever they deem it necessary to their safety and happiness; Provided, Such change be not repugnant to the constitution of the United States."

It is said that the Legislature has all political power not denied it by the state or national constitutions. Hinton v. Board of Sup'rs of Perry County, 1904, 84 Miss. 536, 36 So. 565. It should also be noted that the 1890 constitutional convention had in mind the need for separate treatment of juvenile offenders. Under Sec. 225, the Legislature "may establish a reformatory school

or schools, and provide for keeping of juvenile offenders from association with hardened criminals''. This is a clear recognition by the Constitution itself that the care and rehabilitation of juvenile offenders is a matter which is peculiarly within the police power of the state. As will be later seen, this proposition is universally recognized by the other courts which have passed on this matter. Perhaps the leading Mississippi case on the police power of the State is State v. J. J. Newman Lumber Co., 1912, 102 Miss. 802, 59 So. 923, 45 L. R. A., N. S., 851, in which the Court upheld a law fixing maximum working hours for employees of manufacturing companies. That case discusses in detail the interests which the state may have in matters affecting the public morals, health, and general welfare. All of these factors are intimately affected by the children of the State. They represent both the present and future of democracy in Mississippi and the nation. To deny the Legislature the power to effectively care for and prevent juvenile delinquency, on the basis of an unwarranted textual reading of Sec. 156, would constitute amendment of the Constitution by judicial fiat.

A comprehensive discussion of the validity and effect of Youth Court Acts is in 31 Am. Jur., Juvenile Courts, pages 783 et seq. In Sec. 1 thereof, it is said: ''The past few decades mark a revolution in the attitude of the State toward its offending children, not only in nearly every American commonwealth, but also throughout Europe, Australia, and some of the other lands. The problem of the delinquent child, though juristically comparatively simple, is, in its social significance, of the greatest importance, for upon its wise solution depends the future of many of the rising generation. The early criminal law did not differentiate between the adult and the minor who had reached the age of criminal responsibility— seven at common law and in some of our states, ten in others, with a chance to escape up to twelve, if lacking in mentality and moral maturity. The fundamental

thought in our criminal jurisprudence was not, and in most jurisdictions is not, reformation of the criminals, but punishment; and this applied to children as well as to adults. Today, however, the thought is that the child who has begun to go wrong, who is incorrigible, who has broken a law or ordinance, is to be taken in hand by the state, not as an enemy, but as a protector, as the ultimate guardian, because either the unwillingness or the inability of the natural parents to guide him toward good citizenship has compelled the intervention of the public authorities.''

31 Am. Jur., Juvenile Courts, Sec. 6, citing numerous cases, then states the result which has been reached by practically all of the courts: ''The statutes creating juvenile courts * * * have generally, although not universally, been upheld as against various objections on constitutional grounds as salutary police measures intended for the protection and welfare of the child, upon the theory that the deliquent child is not on trial for a crime, and that the institution to which he is committed is not a prison, but a place where reformation and education and not punishment is the end sought to be obtained. Thus, the view has generally been taken that they are not unconstitutional by reason of dispensing with certain procedural steps and safeguards which are usually regarded as essential in criminal prosecutions, such as trial by jury, arraignment, or plea, or notice to the person, or a warrant of arrest, or because of a provision requiring the child to be a witness against himself. Such statutes have also been held not to be unconstitutional * * * as depriving children of the equal protection of the laws, or of due process of law, or as providing for the imposition of cruel and unusual punishment, or as unlawfully interfering with the relation of parent and child. In many cases the courts have proceeded upon the theory that legislation respecting the commitment, care, and custody of the inmates of reformatory institutions for children is an exercise of the inherent power of the state

as parens patriæ, to interfere on behalf of infants, even between them and their parents, when the morals, safety, or interests of such children require it.''

### REASONABLE CLASSIFICATION.

It is also argued that, assuming the state has the constitutional police power to enact such a statute, still the classification of children under 18 is unreasonable and invalid. The early common-law rule as to criminal responsibility, which until the 1940 act, was still in force in Mississippi, was the same as the medieval rule. An infant under 7 years was not criminally liable for his acts, and children of 7 to 13, inclusive, are presumed to be without criminal capacity, but the presumption is rebuttable. 27 Am. Jur., Infants, Sec. 97; Beason v. State, 1909, 96 Miss. 105, 50 So. 488. However, this common law rule was not written into the Mississippi Constitution and, of course, is subject to revision in the discretion of the law making body. This is the universal rule. It is summarized in 31 Am. Jur., Juvenile Courts, Sec. 15, as follows: **(Hn 3)** ''The power of the Legislature to determine, by rules and definitions, the class or classes of children requiring state supervision, and to enforce such supervision, is generally conceded.'' See also Anno., 3 A. L. R. 1614; 8 A. L. R. 854.

Although Mississippi has no cases specifically considering what is a constitutional classification of criminal statutes, according to age, Bryant v. Brown, supra, upheld the 1916 act and by necessary implication upheld the classification, and the same can be said of the several cases discussed above upholding the validity of the 1940 Youth Court Act. All of them applied to children under 18 years. Also, Mississippi has a large number of criminal statutes which are applicable to persons over or under stated ages, and they have consistently been held valid. Code, Sec. 2052 makes it a felony for a male person above 18 years to commit a designated indecent assault upon a female child under 13 years. Sec. 2053 makes it a

misdemeanor for a person to persuade or to entice away from its father or mother a male child under 21 years or a female child under 18 years, for the purpose of employing the child without the consent of the parents. Sec. 2054, seduction of female child under 18 years; Sec. 2055, selling tobacco products to a child under 18 years; Sec. 1994, abducting a female child under 14 years; Sec. 2050, abandonment of a child under 6 years; Sec. 2051, enticing for prostitution or marriage a child under 14 years; Sec. 2084, father permitting son under 16 years to own deadly weapon; Sec. 2087, parents wilfully deserting or neglecting child under 16 years; Sec. 2198, person gambling with minor; Sec. 2199, ibid.; Sec. 2238, kidnapping child under 10 years; Sec. 2359, statutory rape of female over 12 and under 18 years of age; in Sec. 2360, age of consent, over 12 and under 18, presumption of previous chaste character; Sec. 2374 seduction of female child over 18 years of age. In addition, Mississippi applies the common law conception of minority of infants for purposes of contract liability, less than 21 years of age.

With further reference to the reasonableness of the classification of this act, as to children under 18 years, Vol. 9, Law and Contemporary Problems (1942), pages 579-759, contains a comprehensive analysis of the problems of juvenile courts and youth and crime. On pages 582-583, the following satistical summary is given:

"1. First of all, it is evident that the youth group does not violate laws in general to the same proportionate extent that do some older age groups. The 16 to 20 year olds inclusive—and for purposes of comparison this is the group we are interested in—comprises about 13% of the population above 15 years of age. Yet, it is rare to find more than seven or eight per cent of those arrested by the police of our municipalities in this age group, i. e., if we include in these arrests all violations of the criminal law and traffic violations.

"2. On the other hand, when we limit our view to the serious misdemeanors and felonies, the picture changes.

In crimes against property, the youth group shows higher ratios than any other group. The highest burglary and larceny rates fall in this group. For instance, the youth group commit proportionally twice as many burglaries as the people between 25 and 30 years of age and almost 30 times as many as those of people over 50. They commit twice as many ordinary thefts as do persons between 35 and 40, and nearly nine times as many as those of over 50 years of age. In auto thefts they predominate to such an extent that they nearly triple the rate of the 25 to 29 year olds and exceed those above 50 more than 125 times.''

The Youth Correction Authority Act of California applies to youths under 21 years. Ibid., page 604. The model act prepared by the American Law Institute applies to persons up to 21 years. Ibid., page 617. The following statistical summary in the same article is given on pages 732-733: ''Recent years have seen the extension of the age jurisdiction of many of our juvenile courts beyond the sixteenth or seventeenth year. At the present time the juvenile court has control over delinquent boys up to the age of 18, in 20 states and parts of four others. In 20 of these, jurisdiction is over all offenses without exception. Four states and part of one other give to the juvenile court jurisdiction in delinquency cases between the ages of 18 and 21. In the largest majority of states—30 and parts of three others—the juvenile court may retain jurisdiction up to the age of 21 on continuance of the case after the child has passed the age limit for acquiring jurisdiction in the first instance.''

On pages 663-666 of the same book is a detailed tabulation of the ages of all criminals in California for the year 1940. That table shows that most of the minor offenders were from 18 to 21 years of age. On page 758 of the same volume is a tabular analysis of Youth Court Administration in eleven European countries; most of those courts apply to offenders up to 18 years.

It is therefore manifest that the Youth Court Act of 1946, applicable to children under 18 is a reasonable classification, equal in its application to all those within the stated age limit.

ANALOGOUS DECISIONS FROM OTHER STATES

Courts in at least seven states have passed upon a problem substantially similar to the one presented here, and have reached the same result.

In Ex parte Powell, 1912, 6 Okl. Cr. 495, 120 P. 1022, 1026, a boy 14 years old, Powell, was indicted for burglary, he pleaded guilty, and was sentenced to 2 years. Thereafter he filed this petition for a writ of habeas corpus. It will be noted that the facts are almost exactly similar to the present case. The basis of his petition was that under the 1911 Oklahoma Juvenile Court Act, the exclusive original jurisdiction over him was placed in the county court, which was the juvenile court, and that under that statute until the county juvenile court certified him to the district court for prosecution for a felony, the district court had no jurisdiction. The Oklahoma Statute expressly provided that proceedings under that act were not criminal but civil in nature. The court agreed with the petitioner, issued a writ and discharged him. It said:

"It is next objected that the law is invalid, because it takes away the exclusive jurisdiction of the district court to try felony cases.

"Section 10, art. 7, of the Constitution, confers on the district courts original, but not exclusive, jurisdiction, and even this jurisdiction is conferred, subject to the limitations of section 9, art. 7, which section confers original jurisdiction only until otherwise provided by law. This question has been thoroughly considered by this court in Ex parte Whitehouse, 3 Okl. Cr. 97, 104 P. [372], 374; but no power of the district courts to try felony cases is taken away by the act in question. The juvenile court, as such, cannot try felony cases;

nor does the act in question confer, or intend to confer, any such powers upon the county courts sitting in their capacity as juvenile courts. The Legislature in its wisdom by this law says that a child under 16 years of age cannot be guilty of the commission of a crime, except in cases where it is shown that such child knew the wrongfulness of his acts at the time they were committed. The acts committed by such child, which in an adult would be a crime, under this statute, constitute juvenile delinquency only, except in cases of a serious character, when the juvenile court is authorized by the act, supra, in its discretion, to cause such child to be proceeded against in accordance with the law that may be in force governing the commission of crime.''

The Oklahoma Court has consistently followed the Powell case. The most recent decision is Wilson v. State, 1938, 65 Okl. Cr. 10, 82 P. (2d) 308, in which the court reviews the numerous other Oklahoma cases since Powell. There a conviction of murder was reversed because the original jurisdiction over the child, for juvenile delinquency, was not exercised by the juvenile court. To the same effect is Ex parte Hightower, 1917, 13 Okl. Cr. 472, 165 P. 624. There the minor pleaded guilty, was convicted of manslaughter, and later filed a petition for habeas corpus. It was held that a certificate from the juvenile court transferring the case to the district court was a condition precedent to the latter's jurisdiction. See also State v. Alexander, 1921, 18 Okl. Cr. 546, 196 P. 969. In Ex parte Parnell, 1921, 19 Okl. Cr. 273, 200 P. 456, a minor was indicted for grand larceny, pleaded guilty and sentenced. He later filed a petition for habeas corpus, on the ground that the exclusive original jurisdiction over him as a delinquent child was in the juvenile court, the writ was allowed and Parnell discharged. In Ex parte Alton, 1927, 38 Okl. Cr. 383, 262 P. 215, Alton was indicted for grand larceny, pleaded guilty, and sentenced. He later filed a petition for habeas corpus. It was granted and he was discharged. The dis-

trict court had no jurisdiction over juvenile delinquency, and had no jurisdiction over a crime serving as a part thereof until the juvenile court certified the case for criminal prosecution. See Ex parte Humphries, 1925, 31 Okl. Cr. 172, 237 P. 624.

In Commonwealth v. Yungblut, 1914, 159 Ky. 87, 166 S.W. 808, 809, the court considered the Kentucky Juvenile Court Act of 1910. It held that the juvenile court had exclusive original jurisdiction to consider all of the facts charging a child with juvenile delinquency, that the circuit court could not prosecute the minor for any crime until the case was certified, and that the proceeding in the juvenile court was civil in nature. To the same effect are Commonwealth v. Franks, 1915, 164 Ky. 239, 175 S.W. 349; Talbott v. Commonwealth, 1915, 166 Ky. 659, 179 S.W. 621; Commonwealth v. Davis, 1916, 169 Ky. 681, 185 S. W. 73; Clark v. Commonwealth, 1923, 201 Ky. 261, 256 S.W. 398; Watson v. Commonwealth, 1933, 247 Ky. 336, 57 S.W. (2d) 39.

In Sams v. State, 1915, 133 Tenn. 188, 180 S.W. 173, Sams was convicted in the circuit court of unlawfully carrying concealed weapons. His conviction was reversed. The Tennessee Juvenile Court Act provided that a child under 16 charged with an offense shall be taken directly before the juvenile court, and it was the duty of the circuit court to transfer the matter to the juvenile court.

In State v. Burnett, 1920, 179 N.C. 735, 102 S.E. 711, two children under 10 years of age were indicted for murder, and the superior court transferred the case to the juvenile court, from which the attorney general appealed. The statute gave the juvenile court "exclusive original jurisdiction" over children less than 16 years. The action below was affirmed. Children under the stated age are no longer indictable as criminals unless the juvenile court shall find that they are incorrigible and certify them to the criminal court. The court expressly held that this was within legislative authority of the general assembly under its police power, and that the classifi-

cation was in the legislature's discretion. It said that the act dealt with minors as delinquent children, and not as criminals. It considered common law analogies, and said that the legislature was warranted in finding them outdated. The opinion is an excellent discussion of these considerations. In State v. Coble, 1921, 181 N.C. 554, 107 S.E. 132, the state again questioned the action of a trial court in transferring the case to the juvenile court. It was held that the child's delinquency is "cognizable in the first instance only in the juvenile court".

In Ex parte Albiniano, 1939, 62 R. I. 429, 6 A (2d) 554, 123 A.L.R. 441, a minor was convicted and sentenced on two separate indictments for grand larceny. He had pleaded nolo contendere. He then petitioned for a writ of habeas corpus, claiming that under the juvenile court act his conviction was void. The court held that one of the convictions was valid, because he was 16 when the proceedings were first taken against him. The other was void, because at that date he was under 16. The juvenile court act established jurisdictional prerequisites to a criminal prosecution.

In Macon v. Holloway, 1923, 19 Ala. App. 234, 96 So. 933, 935, the minor, Macon, was charged with juvenile delinquency, being under 18 years of age, and the juvenile court after a hearing certified the case to the circuit court for grand larceny prosecution. She was there convicted. The minor then asked for a writ of mandamus to the juvenile court requiring it to rescind its order of transfer to the circuit court. A demurrer to this petition was sustained. The court upheld the juvenile court act, and said that it saw nothing unconstitutional in the provision allowing the juvenile court, after a thorough judicial hearing, to transfer the case to the circuit court for prosecution. It said that the effect of the provision of the statute was to temporarily suspend the right of the state to proceed against the child for the violation of the criminal statutes of the

state. It was said that it is well settled "that the classification of persons amenable to punishment for crime within the constitutional limitation is a legitimate exercise of legislative authority."

In Bell v. State, 1924, 20 Ala. App. 101, 101 So. 68, the minor was convicted of assault with a deadly weapon. The court held that the circuit court had no jurisdiction because the appellant was under 16 years of age. The court should have followed the mandatory terms of the statute and transferred the case to the juvenile court. See also Powell v. State, 1932, 224 Ala. 540, 141 So. 201, 211.

The most recent case discussing these issues is Wade v. Warden of State Prison, Me. 1950, 73 A. (2d) 128, 137, where Wade was charged with manslaughter, and the juvenile court, without judicial inquiry into whether or not he was incorrigible, transferred the case to the superior court for trial for a felony. He was found guilty. He then petitioned for a writ of habeas corpus on the ground that he was under 17 years of age, and that under the Maine Juvenile Court Act, the juvenile court had exclusive original jurisdiction over him. This position was affirmed, the writ issued and appellant discharged. The court considered in detail the purposes of such legislation, holding that it is remedial and civil in nature rather than criminal, and that it is a valid exercise of the police power of the state. Delinquency was unknown at common law as the term is used in present juvenile court acts. Judge Merrill, in a concurring opinion, discussed the cases from other states, and said: "Recognizing the broad principles of public policy which underlie the juvenile court acts, the great weight of authority is that the exclusive original jurisdiction conferred upon the juvenile court is a true jurisdiction, as distinguished from a mere privilege extended to the juvenile. That this is so is established by decisions which hold that failure to institute proceedings therein for offenses within the exclusive original juris-

diction of the juvenile court is fatal to a trial, conviction and sentence in the criminal courts. There are many cases in which convictions for very grave offenses have been set aside on appeal, or the convicted juvenile discharged from imprisonment on habeas corpus for failure to take the juvenile before the juvenile court in the first instance, and included are many cases where the age of the juvenile was first raised either on the appeal or in the habeas corpus proceedings." Contra: People v. Lattimore, 1935, 362 Ill. 206, 199 N.E. 275; Ex parte Mei, 1937, 122 N.J. Eq. 125, 192 A. 80, 110 A.L.R. 1080.

CONSTITUTIONAL JURISDICTION OF CHANCERY COURT OVER MINOR'S BUSINESS

For all of the above reasons, the Youth Court Act is soundly based upon the police power of the State and its vital interest as parens patriæ of children. And there is an additional reason why the act is valid. It grants the powers therein delegated to a constitutional court, under the instant facts, and that the court has an inherent as well as an express constitutional jurisdiction over and interest in minors.

Mississippi Constitution Sec. 159(d) provides: "The chancery court shall have full jurisdiction in the following matters and cases, viz.: * * * (d) Minor's business; * * *." The chancery court is given "*full*" jurisdiction over "minor's business." This is a constitutional statement of a traditional equity jurisdiction. From the earliest times, infants were regarded as entitled to the special protection of the state. 27 Am. Jur., Infants, Secs. 101, 102, 105, 114. In Davis v. Davis, 1943, 194 Misc. 343, 12 So. (2d) 435, 436, it was held that the legislature may add new equity powers to those created by the Constitution, but it can not subtract from such chancery power. The Court held: "That the equity powers thus recognized and established include the jurisdiction over infants, including the right and duty to protect their interests and welfare by decreeing their

custody, should not be questioned.'' See also Louisville, N. O. and Texas Ry. Co. v. Blythe, 1892, 69 Miss. 939, 11 So. 111, 16 L.R.A. 251; Griffith, Mississippi Chancery Practice, (2d ed. 1950), Sec. 45. In Union Chevrolet Co. v. Arrington, 1931, 162 Miss. 816, 138 So. 593, 595, the Court, discussing equity powers over infants, said that ''This inherent and traditional power and protective duty is made complete and irrefragable by the provisions of our present state constitution.'' See also Mitchell v. Film Trust Company, 1943, 194 Miss. 550, 13 So. (2d) 154; 43 C.J.S., Infants, Sec. 5. The Youth Court Act is a statutory application and enlargement of that chancery power. This same interpretation is manifested in Bryant v. Brown.

The dissenting opinion relies primarily for its interpretation of Constitution Sec. 156 upon Montross v. State, 1883, 61 Miss. 429. There the Legislature undertook to deprive the circuit court of jurisdiction over all specified crimes within the Town of Biloxi, and to confer it on the mayor's court, in which appellant was convicted of operating a bar-room on Sunday. He was later tried on the same charge in the circuit court, where appellant pleaded in bar his prior conviction in the mayor's court for the same offense. His conviction in the circuit court was affirmed. His conviction under the statute in the mayor's court and the statute were held void, because the act violated that section of the Constitution of 1869, art. 6, Sec. 14, conferring exclusive jurisdiction on circuit courts ''in all criminal matters''. The statute undertook to transfer the circuit court's jurisdiction of *crimes* committed in Biloxi to another court.

The present case involves an entirely different situation and issue. Here the Legislature, dealing with a particular class of persons, minors under 18 years of age, is exercising its police power in saying that such minors, with exceptions, are not subject to the criminal laws of the State, unless the Youth Court, after a judicial inquiry, determines that they should be. If the minor

becomes subject to criminal prosecution, the act expressly states that the circuit court has jurisdiction of the offense. In the Montross case, the court was not dealing with minors, or the substantial interest of the state in their welfare, or the power of the Legislature to define crimes and the age of criminal responsibility. All of these factors are now involved, and are matters which usually are subject, under our Constitution and form of government, to the legislative process rather than to judicial appraisal. We can not consider the wisdom of such legislation except indirectly, as being relevant on the question of whether the act and the classification are within the state's police power. And a governing principle of constitutional interpretation is that the courts will not declare a statute void unless its invalidity is clear and beyond a reasonable doubt. Russell Investment Co. v. Russell, 1938, 182 Miss. 385, 418, 419, 178 So. 815, 182 So. 102.

In brief, because of the provisions of Sec. 3 of the Youth Court Act, the circuit court had no jurisdiction of appellant at the time of his conviction in January, 1951, since he was then 17 years of age. The original exclusive jurisdiction over him under Sec. 3 was in the Youth Court Division of the Chancery Court of Covington County. Hence the judgment of conviction under which appellant was held was void, and the chancery court should have issued the writ of habeas corpus.

In Farr v. State, 1946, 199 Miss. 637, 25 So. (2d) 186, it was held that the 1940 act fixed the time at which the trial court's jurisdiction is determined as the date of the trial of defendant, and this would seem to be the intent also of the 1946 act, as evidenced by Secs. 4, 5, 15 and 16. At the present time, appellant is 18 years of age, so under Secs. 2(c) and 3 of the 1946 act the Youth Court now has no further jurisdiction over appellant. Stallings v. State, 1935, 129 Tex. Cr. R. 300, 87 S.W. (2d) 255. See also Anno., 76 A.L.R. 657; 123 A.L.R. 450.

Reversed, writ of habeas corpus ordered as to judgment of conviction, and appellant ordered held under bond pending any further action of grand jury.

**McGehee, C. J.,** and **Alexander, Holmes,** and **Arrington, JJ.,** concur.

**Lee, J.** (dissenting).

I am mindful that a statute should be construed so as to render it valid and in harmony with the Constitution, if reasonably possible; and that its unconstitutionality ought to appear beyond reasonable doubt before it should be held invalid. Quinn v. City of McComb, Miss., 55 So. (2d) 479.

Section 156, Constitution of 1890, is as follows: *"The circuit court shall have original jurisdiction in all matters* civil and *criminal in this state not vested by this Constitution in some other court,* and such appellate jurisdiction as shall be prescribed by law." (Emphasis supplied.)

The above section is an exact rescript of Section 4, Article 5 of the Constitution of 1817; Section 14, Article IV of the Constitution of 1832; and Section 14, Article VI of the Constitution of 1869, except that in the Constitution of 1817, the Court was designated as the superior rather than the circuit court, and the phrase "not vested by this Constitution in some other court" did not appear in those Constitutions.

Thus, since 1817 for a period of one hundred and thirty-five years, by the Constitutions of our State, the circuit court has been given original jurisdiction of all criminal matters. Doubtless one of the reasons for vesting such original jurisdiction was that the circuit court is looked upon by many as the people's court. The accusing branch thereof, the grand jury, is drawn from the body of the people of the county. Selected from, and representative of, the people, it may be said to be the people; and if the people desire to prefer charges against a citizen, they

should have an unfettered forum. Manifestly, Section 156 did not purpose that the people's forum should be subordinate to any other court.

The only vesting of jurisdiction in criminal matters in any other court is by Section 171 thereof, which provides that justices of the peace "shall have jurisdiction *concurrent* with the circuit court over all crimes whereof the punishment prescribed does not extend beyond a fine and imprisonment in the county jail; * * *". (Emphasis supplied.) The effect of these two sections is that both the circuit and the justice of the peace courts, alike, have jurisdiction to try misdemeanors, and the one first taking jurisdiction has full jurisdiction; but as to felonies, that is, crimes punishable by death or imprisonment in the penitentiary, the circuit court, in which indictment by a grand jury is requisite, alone has jurisdiction. Section 27, Constitution 1890.

The Constitution of 1890 provided for only four state courts: The Supreme, Circuit, Chancery, and Justice of the Peace courts. The Supreme Court has only appellate jurisdiction in criminal matters, and the chancery court is vested with no jurisdiction whatever in such matters.

The language of Section 156 is so simple that any effort to define may render it complex. But if original jurisdiction may need some light in order to interpret, attention is called to 67 C. J. S., page 526, where it is said: "Employed as an adjective, the word 'original' is defined to mean first in order; initial; preceding all others; pertaining to the origin or beginning." See also Webster's New International Dictionary, 2nd Edition. In 50 C. J. S., page 1090 it is said: "The word 'jurisdiction' implies a court or tribunal with judicial power to hear and determine a cause, * * *".

Manifestly then, the circuit court is both the first and the only court vested with judicial power to hear and determine felony charges.

Evidently because the language of the section is so plain and unambiguous, the Legislature, until the Youth

Court Act was passed, during the whole one hundred and thirty-five years of our statehood, has undertaken but one time to deprive the circuit court of any of its jurisdiction. That instance is reported in Montross v. State, 61 Miss. 429, decided in 1883. On October 23, 1866, the Legislature approved an act, incorporating the Town of Shieldsborough, and declared the mayor, two aldermen, the clerk and marshal of the town to constitute an inferior court, with jurisdiction as follows: "The said court thus constituted shall have full, complete, and exclusive jurisdiction of all the police matters prescribed by the ordinances and by-laws of said city, of all breaches of the peace, assaults, assaults and batteries, violations of the Sabbath of every kind against the laws of the State, etc." By amendment on March 8, 1882, which also extended to the Town of Biloxi, it was provided " 'that for all violations of the laws of the State of Mississippi,' as enumerated in the preceding portions of said section, the board of mayor and aldermen shall have the power, and are hereby authorized and empowered, to regulate all fines imposed for said violation of the State laws, at not less than one dollar or more than twenty-five dollars, as in their opinion, will best insure the enforcement of the laws of the State of Mississippi, and the welfare and order of the community." Laws 1882, c. 282.

Montross was indicted in the circuit court of Harrison County for keeping his barroom open on Sunday. He plead, in bar of the prosecution, a former conviction for the same offense by the mayor's court of the Town of Biloxi, for which he had paid the fine of $1.25 and costs. The State's demurrer to the plea was sustained, Montross was convicted and he appealed to this Court. The action of the trial court, in sustaining the demurrer, was affirmed, and the Court there said: "*The legislature has by the constitution power to establish inferior courts and to confer upon such courts jurisdiction over crimes and misdemeanors, but it cannot confer upon such courts jurisdiction exclusive of that which by the constitution*

*is given to the courts established by the constitution itself.* By section fourteen of article six of the constitution, *original jurisdiction is conferred upon the circuit courts of the State in all criminal matters, and such jurisdiction cannot be withdrawn by the legislative department of the government.* The legislative, the executive, and the judicial departments are each protected by the constitution against encroachments by the others, and the power conferred upon either cannot be withdrawn or abridged by either or both of the coordinate branches. *If the legislature may withdraw from the constitutional court jurisdiction conferred by the constitution over one class of cases, it may withdraw it over another and another, until finally there would be no subject over which it might be entertained.* * * * Looking to these acts of incorporation and the amendment thereof, *it is apparent that the fundamental idea of the legislature was the exclusion of the jurisdiction of the circuit courts over the offenses named.* It cannot fairly be said the intention was to commit to the local authorities a concurrent jurisdiction with the circuit court, for the whole tenor of the legislation is to the end of withdrawing, not of conferring, power. *We are therefore constrained to declare the scheme to be violative of the constitution and void.* From these views it follows that the Mayor's Court of the Town of Biloxi was without jurisdiction of the offense, and its judgment was a nullity.'' (Emphasis supplied.)

Now, in spite of the fact that Section 156 vests original jurisdiction of criminal matters in the circuit court, and in spite of the fact that this Court, in the Montross case, supra, held that the Legislature can not confer upon an inferior court jurisdiction exclusive of the circuit court, Section 3, Chapter 207, Laws of 1946, the Youth Court Act provides as follows: *''Except as otherwise provided herein,* the court shall have exclusive original jurisdiction in all proceedings concerning any delinquent or neglected child residing or being in the county.'' (Emphasis supplied.) And, by Par. (c), Section 2 thereof, ''child''

means a person who is less than eighteen years of age. The above mentioned exception is contained in Section 15 of the Act. If the child is thirteen years of age or older, "the circuit court shall have exclusive jurisdiction of such child if he be charged with any crime which, upon conviction, is punishable by life imprisonment or death."

Thus, the only criminal cases where the circuit court will continue to have original jurisdiction, when the accused is under eighteen years of age, are murder and rape.

Grand larceny, under our law, is a felony punishable by a maximum sentence of five years in the penitentiary. Section 2340, Code of 1942. Although Section 156, supra, vests in the circuit court original jurisdiction of all crimes, including grand larceny—cattle stealing in this case—this Act takes away such jurisdiction completely. Stealing by one under eighteen years of age can not be treated as a crime by the circuit court, unless the Youth Court gives its permission. The Legislature, by the euphemism of denoting as a civil matter what, since Mount Sinai, has been regarded as a crime, has taken away the jurisdiction vested in the circuit court by the Constitution itself, and has rendered that court powerless to do anything about prosecutions of such persons.

Besides, Section 17 of said Act provides: "No child under thirteen years of age shall be prosecuted criminally for a misdemeanor or a felony, but such case must be handled by the youth court."

The above classifications are contrary to the landmarks of human responsibility. From time immemorial, a person under seven years of age has been conclusively presumed to be incapable of committing crime. Between the ages of seven and fourteen, he is presumed to be incapable, but such presumption is rebuttable, and the State is privileged to show that he has such capacity. After fourteen years of age, he is presumed to have capacity. Joslin v. State, 75 Miss. 838, 23 So. 515; Beason v. State, 96 Miss. 105, 50 So. 488; Miles v. State,

99 Miss. 165, 54 So. 946; Holmes v. State, 133 Miss. 610, 98 So. 104; Triplett v. State, 169 Miss. 306, 152 So. 881; Cochran v. Peeler, 209 Miss. 394, 47 So. (2d) 806.

The Youth Court Act, insofar as criminal responsibility is concerned, abolishes the wisdom of the ages, which rests on the laws of nature itself. If the Legislature shall be permitted to say that a seventeen year old is without capacity to steal, by the same token, it can arbitrarily increase the age of responsibility to twenty-one, or to any other age.

In the case of Bryant v. Brown, 151 Miss. 398, 118 So. 184, 187, 60 A. L. R. 1325, it was recognized that there are two schemes, under our law, for dealing with delinquent or incorrigible children and those who have violated the law. The child could be indicted in the circuit court for either a misdemeanor or a felony, and in a trial there, he would have all the rights accorded to any other person violating the law, including a jury trial and other incidents of the criminal law. But, if the circuit court was of the opinion that the chancery court could deal better with the child, it could transfer the case to that court. On such transfer, the case was then to be tried in accordance with procedure in the chancery court, as such proceedings would not then involve a prosecution for crime as such. The cause was thereby changed to a civil proceeding, and was governed by the rules of procedure as in other civil cases. The Court there said: "It will be seen from an examination of the above-cited sections that there are *two schemes* provided in the law *for dealing with immoral, delinquent, or incorrigible* children, or *those who violate the law,* either state or municipal, where such law involves moral turpitude, and instead of inflicting the punishment ordinarily inflicted for a violation of these statutes in proceeding under this statute, *if the court proceeds to try the child in the circuit court under indictment for either misdemeanor or felony, the child has all the rights accorded to any other person violating the law, includ-*

*ing jury trial and other incidents of criminal law. But if the court having jurisdiction of the misdemeanor or felony is of the opinion that the chancery court can better deal with the child,* having regard to all the circumstances of the case, *than the circuit court, the case may be transferred to the chancery court for proceedings under section 10* of the act. If the cause is so transferred to the chancery court for hearing, it proceeds according to the procedure of the chancery court, and does not involve a prosecution for crime as such. *In a case so transferred, the proceeding is changed from a criminal to a civil proceeding, and is governed by the rules of procedure in other civil cases.''* (Emphasis supplied.)

In that case, there was no clash in jurisdiction. There was no denial whatever of jurisdiction of the circuit court in criminal matters. On the contrary, its jurisdiction was recognized; but it was empowered to transfer such causes to the chancery court when it deemed it to be proper. In such event, the causes became civil proceedings, and the incidents of the criminal law were not available.

But the Act here under review does not leave to the circuit court the power to transfer a case to the chancery court in order that it may then be treated as a civil proceeding. On the contrary, it denies to the circuit court jurisdiction of such case altogether. Such a situation is contrary to 31 C. J. 989, which says that: *''Within constitutional limitations the legislature has power to create or establish such courts, and to confer upon them jurisdiction, powers, and duties which do not conflict with organic provisions*; \* \* \*''. (Emphasis supplied.) See, also 43 C. J. S., Infants, § 6 and cited in Bryant v. Brown, supra.

The reference in the majority opinion to the history of the inception and development of the Juvenile Court idea is concrete proof of the far-reaching effect of gradual encroachment: Let the camel get his head under the tent and he will take over completely.

Why should we be concerned with the citation of authorities from other jurisdictions when it is not even contended that the constitutional provisions are the same? But, even if they are alike, we turn to other jurisdictions only when our own Court has not decided the particular question. We are bound by the provisions of our own Constitution and decisions; and Section 3 of the Youth Court Act is directly in the teeth of the plain and unambiguous language of Section 156 of our Constitution, and directly in the teeth of the opinion of this Court in the Montross case, supra.

There is no authority from this Court which would entitle the chancery court under the jurisdiction vested in it by Paragraph (d), Section 159, Article 6 of the Constitution to deprive the circuit court of its jurisdiction in criminal cases. As a matter of fact, the common acceptation of the meaning of that jurisdiction is the power to look after the property rights of minors, and appoint guardians of their persons and property.

The Constitution is the supreme law of our State. It is the anchor to the rights and liberties of the people. All officers, before their induction, must solemnly swear to uphold it. Peculiarly is that obligation binding on this Court, because its decision is the final authority in the construction and interpretation thereof. It is upheld and maintained in its pristine glory, or it becomes a mere meaningless scrap of paper, as this Court may decide.

In my opinion, there is no reasonable basis on which to construe Section 3, Chapter 207, supra, as valid or in harmony with Section 156 of our Constitution. I think that its unconstitutionality appears beyond reasonable doubt, and that this Court should so declare. For that reason, I most earnestly dissent against the conclusion of the majority opinion.

**Roberds, Hall** and **Kyle, JJ.**, concur in this dissent.